[No. 27507. Department One. October 24, 1939.]

EDWARD G. BERNARD *et al., Respondents,* v. TRIANGLE MUSIC COMPANY, *Appellant.*[1]

*J. P. Tonkoff,* for appellant.

*Roberts, Swanson & Tunstall,* for respondents.

ROBINSON, J.—This is an action in unlawful detainer.

The complaint alleged, in substance, that, in August, 1936, by an instrument attached as an exhibit and incorporated by reference, R. E. and Jasper G. Mikkelson leased to Triangle Music Company a certain storeroom in Yakima, therein described; that, on September 19, 1938, the lessors sold the property to the plaintiffs and assigned the lease; that it was provided in the lease that, if the lessee should fail to pay any installment of the rental when due, after ten days' written notice to make good the default, the lessors might, at

[1]Reported in 95 P. (2d) 43.

their option, cancel the lease and reenter, in which event the two months' rental paid upon the execution of the lease should become the property of the lessors as liquidated damages for the breach; that the defendant failed to pay the installment due on or before January 2, 1939, and the plaintiffs, on January 16, 1939, served a notice to pay or vacate; that more than ten days had elapsed and no payment had been made, nor had the defendant vacated the premises. The plaintiffs prayed for a judgment for double the amount of the January rent, the forfeiture of the last two months' rental paid at the time the lease was made, costs, including attorney's fees in the sum of $250, an order of restitution, and such other relief as to the court might seem just and equitable.

A purported copy of the complaint was served upon the defendant on January 28th. The original was filed in the clerk's office on January 28th, but was not verified until the following February 7th.

The defendant served and filed its answer on January 31st, putting the plaintiffs on proof by denying all of the allegations of the complaint, except as admitted or qualified by an affirmative defense. In such defense, it admitted the execution of the lease, its assignment to the plaintiffs, that the copy attached to the complaint was correct, the service of the notice to quit or pay rent, and that it had continued in possession. It set up affirmatively that it had been willing and ready to pay the rentals stipulated in said lease, but did not know to whom to pay them, and that both Walter V. Swanson, one of plaintiffs' attorneys, and J. A. Alexander, father of Mrs. Bernard, had demanded payment, the latter exhibiting what purported to be written authority. Defendant further set up that it was able and willing to pay the monthly

rental, and had deposited the rental for the month of January, $135.00, with the clerk, and would continue to make such deposits, when due, until the controversy should be determined. Upon this answer, the defendant prayed that the action be dismissed, and that it have judgment for costs, including an attorney's fee of $250. The prayer for an attorney's fee, by each of the parties to the action, is based upon paragraph 13 of the lease:

"In any suit or action that may arise out of this agreement, the reasonable attorneys' fees of the successful party thereto shall be a part of the costs of suit and collectible in the same manner."

At the trial, plaintiffs put in evidence the deed from the Mikkelsons, the original lease, the assignment, the notice to quit or pay rent, and an affidavit showing that the notice was served on January 16th. They then called Mr. Preisz, president of the defendant corporation, and procured an admission that the January rent had not been paid prior to January 26th at least, the witness, however, stating that he had tried to pay it on January 23rd. His evidence closed with the following:

"Q. The Triangle Music Company is now in possession of the premises? A. Yes. Q. And you refuse to give them to the landlord, do you? A. Yes. Q. The answer is yes? A. I said, yes, we refuse to give it up."

Whereupon the plaintiffs, after calling the attention of the court to the provision in the lease regarding attorney's fees, rested their case.

Defendant called J. A. Alexander, father of Mrs. Bernard, who testified that his daughter purchased the premises in September, 1938, and that he was authorized to collect the rent. At this point, plaintiffs' counsel objected, on the ground that the defendant was attempting to interpose an equitable defense, and con-

tended that only legal defenses are admissible in an unlawful detainer action. After extended argument, the trial judge announced that he would hear the evidence, but would reserve ruling on that point.

The substance of the testimony offered by defendant was as follows: Mrs. Preisz testified that Mr. Alexander came to the store on January 20th, 21st, or 22nd, and stated that he had a letter from his daughter, Mrs. Bernard, authorizing the defendant to pay the rent to no one but him.

"Then he—I asked him if he would object if Mr. Preisz saw the letter, if he would bring it in at some future time. He agreed; said yes, he thought he could. I said to him at the time, 'Will you notify Mr. Swanson or shall I?' 'No,' he said 'I'll take care of it; I'll talk to Mr. Swanson.'"

Mr. Priesz testified that the incident happened on the 20th, and that he went up to Mr. Alexander's house to see the letter on the 21st, and that he copied a portion of it, including the date, which was January 12th. A subpoena *duces tecum* had been issued to Mr. Alexander requiring him to produce the letter. He testified that he had mislaid it. He did testify, however:

"Q. Do you remember when Mr. Preisz came up to read that letter up to your house? A. Yes. Q. Do you remember if Mr. Preisz copied a part of that letter? A. Yes. Q. Do you remember if it read something like this: 'So if Preisz or anyone else is now making payments on our loan, we want this changed. We want him to make payments to you. If you would like us to write him to this effect we will do so'? A. I think that is verbatim."

He further testified:

"A. Yes, I told his wife that I would be in to— that's what I went in for that day. I told her I'd be in to get the rent; then, when Mr. Preisz was out, I told him I'd be in to collect the rents."

On January 23rd, the defendant wrote the following letter to Mrs. Bernard at her New York address:

"Dear Mrs. Bernard:

"We have experienced some difficulty in determining to whom we are to pay rental on our store located at 18 South 2nd Street, in Yakima, of which we are informed, you are now owner.

"We went into detail after the deal had consummated, with your father, Mr. J. A. Alexander, and he informed us we were to pay all rentals to him. Almost immediately after this, Mr. Swanson of the Federal Loan (or so we assume) called us and informed us he would collect all rentals, and no one else was authorized to accept these monies. We accordingly paid rental to Mr. Swanson.

"Two days ago, Mr. J. A. Alexander, your father called in to see us, and said he had received a letter from you, authorizing him to collect all and any rentals and we copied the following from your letter to him:

"—'So if Preisz or anyone else is now making payments on our loan, we want this changed. We want him to make payments to you. If you would like us to write him to this effect we will do so.'

"Signed—Wanda Bernard

"We have since taken this up with Mr. Swanson who demands the rental, and says the contents of the letter mean nothing to him. You can readily see the position in which we, as the tenants are placed, and we shall have to ask that you advise us direct by air mail or telegram exactly what you wish done about these rental payments. It is most disconcerting for us to be buffeted about in this manner, and to not know to whom we are to pay these payments. We are therefore holding up all rental payments until we receive from you written authority as owner to whom we are to make these payments.

"Very truly yours,
"Triangle Music Inc.
"Ruth E. Preisz."

It appears from other evidence that the defendant had paid the October, 1938, rent to Alexander on

October 31st, and the November and December rent to Swanson on November 5th and December 3rd.

After further considering the matter, Mrs. Preisz concluded that the best plan would be to carry out the instructions of the owner of the building, and she sent a check for $135 to Mr. Alexander's residence by messenger on the same day she wrote to Mrs. Bernard. The messenger, Mr. Exner, an employee of the defendant, testified that he was unable to find anyone at the Alexander residence and returned the check to Mrs. Preisz. She then sent it to the appellant's attorney, Mr. Tonkoff. There is a great deal of conflicting evidence as to exactly what course he took, and when. We accept the following statement in the respondents' brief as being in accord with the weight of the evidence:

"The first actual tender of the rent was made by Mr. Tonkoff, counsel for appellant, to Mr. Swanson two days following the expiration of the ten day notice period, to-wit, January 28, 1939, and after the filing of the complaint in this cause, and the amount of the tender was exactly the amount of the rent, to-wit, $135.00, without interest and without costs of making or serving the notice and without costs of filing and serving papers in this cause. This tender was refused by Mr. Swanson."

The check was deposited in court, with the defendant's answer, on January 31st. The cause was tried on February 7th. Holding that a further sum of $135 had become due on February 1st, the court entered judgment for the plaintiffs for $540, plus $17.20 taxable costs, plus $125 attorney's fees, plus $7.50 for preparing and serving notice to quit or pay rent, forfeited the $270 deposit as liquidated damages, canceled the lease, and granted the writ of restitution.

The appellant contends here, as it contended in the lower court, that the circumstances shown invited,

and justly required, the application of equitable principles, relying particularly upon the case of *Waterman v. Robertson,* 103 Wash. 553, 175 Pac. 177, and a statement from the opinion in *Income Properties Inv. Corp. v. Trefethen,* 155 Wash. 493, 284 Pac. 782:

"In the unlawful detainer action, appellants do not seek to continue their contract and recover their rent, but to enforce a forfeiture; and forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of the legal right thereto."

It must be conceded that, from an equitable point of view, the result reached in the trial court appears appalling. On January first, the lease had but eight months to run. The appellant had paid the rental for the last two of those months in advance, and, upon the payment of $135 per month for six months, or $810, would have been entitled to occupy the property until August 31st, and then to renew the lease for a five-year period. Because the appellant was found to have been two days late in tendering $135, plus $7.50 for drawing and serving the notice to quit or pay rent, a tardiness for which it had, at least, colorable excuse, its advance rental for $270 was forfeited, judgment was entered against it for $540, plus an additional amount of $149.70 in costs and attorney's fees, its lease was canceled, and, by a restitution order, it was deprived of more than six and one-half months of the remaining eight months of the term. The respondents, on the other hand, retained the $270 deposit, recovered judgment for an additional sum of $689.70, and were awarded the right to reenter and enjoy full possession of the property for the last six and one-half months of the eight months' term.

The respondents contend, however, that the matter cannot rightly be considered from an equitable point of view. They urge that an action of unlawful detainer

is a straight legal action, permitting no equitable defenses, and one with which equity has nothing whatever to do. They further insist that this is merely an action to enforce a contract voluntarily entered into by the parties, and that any attempt by the court to excuse a breach of any of its provisions or prevent the operation of any applicable provisions of the unlawful detainer statute upon supposed equitable considerations would constitute a clear abuse of judicial power. In short, the respondents claim to be entitled to retain each and every element of the recovery allowed below, upon the ground, as it were, that it is so nominated in the bond.

We agree with respondents, at least to this extent, that this is an action to enforce a written contract, and, in the absence of a showing of fraud or other infirmity in its inception, the court must enforce it as written; that the court cannot disregard or suppress any of its terms; and, of course, by the same token, it cannot read anything into the instrument which is not already there. Upon respondents' insistence that legal principles furnish the only correct test of their rights in the matter, we will, in the first instance at least, consider the case from a strictly legal viewpoint.

Paragraph 10 of the lease contract reads as follows:

"It is expressly agreed and understood that the prompt payment of the rentals at the times hereinabove specified is the essence hereof, and if the Lessee shall fail to pay any installment of rental when due, or to pay any of the checks mentioned above when due, after ten (10) days written notice to make good said default the Lessors may at their option declare this lease at an end and may in person or by their agents or assigns enter upon said demised premises and resume possession thereof and expel the Lessee therefrom, either with or without process of law, in which said event the last two months' rental paid upon the execution of this lease shall be and become the prop-

erty of the Lessors as liquidated damages for the breach thereof."

The action is based upon the assumption that, by the terms of the lease, a rental of $135 for the month of January, 1939, was specified as due on or before January 2nd. The allegation that it was then due is made in paragraph 5 of the complaint, and denied in paragraph 3 of the answer. It was upon the assumption, of course, that this was the time "specified" for the payment of the January rent that the notice to quit or pay rent was served on January 16th, for the purpose of establishing a legal foundation for this action.

The covenants to pay rent are contained in an unnumbered paragraph on the first page of the instrument. We say "covenants" because there are three separate covenants, one relating to the first year of the lease, another, to the second, and a third and different covenant covering the balance of the lease period:

"Said Lessee hereby agrees to pay said Lessors as rental for said premises the sum of $115.00, upon the execution of this lease, receipt whereof is hereby acknowledged, and upon the execution of this lease to deliver to the Lessors, four post-dated checks, dated as follows: One dated November 1, 1936, for $45.00; one dated December 1, 1936, for $45.00; one dated January 1, 1937, for $45.00, and one dated March 1, 1937, for $135.00, said checks to pay the rental for the last 2 months for the term hereof and the further sum of $115.00 per month beginning October 1, 1936, and $115.00 per month for the balance of the first year of said lease, $125.00 per month in advance during the second year of said period, and the sum of $135.00 per month during the balance of said period, and the like sum of $135.00 per month during the extended term of this lease if extended."

It thus appears that the lessee, having paid $115 upon the date of execution, covenanted to pay the further sum of $115 on October 1st, and the further sum

of $115 per month for the balance of the first year of the lease. For the second year of the lease period, the lessee covenanted to pay $125 per month in advance. For the balance of the lease period, that is, from September 1, 1938, to August 31, 1939, the lessee simply covenanted to pay "the sum of $135 per month." The words "in advance" do not appear in the covenant covering that period, and the trial court had no power to supply them or otherwise alter or vary the contract.

It cannot be held that the covenant, as it stands, is incomplete or ambiguous and, therefore, subject to constructive interpretation. We are legally bound to treat it as complete and certain, for the common law, in so far as it is not inconsistent with our constitution and laws nor incompatible with our institutions, is prescribed as the rule of decision in all the courts of this state; and it is an old and well-established rule of the common law that, when rent is reserved in a lease and no time is specified for its payment, it becomes due on the last day of the period with respect to which it is reserved, whether that period be a week, a month, a quarter, a year, or a term of years.

As proof of the existence of this rule, as illustrative of its application to a covenant reserving rent for monthly periods and to show that the covenant under discussion is complete and certain as it stands, we quote the syllabus prepared by the court of errors and appeals of New Jersey to head its opinion in *Kistler v. McBride*, 65 N. J. L. 553, 48 Atl. 558:

"Plaintiff was the tenant of one of the defendants, under a written lease, for the term of one year, from April 1st, 1899, at the rent of $202, 'payable as follows: $22 a month for the six months, April, May, June, July, August and September, and $11.67 per month for the remainder of the year.' *Held*—

"1. That by the terms of the lease each monthly payment became due at the end of the month, and that

a distress warrant for the August rent, issued and executed on August 2d, was premature.

"2. That evidence that the parties, at the time of the execution of the lease, agreed, by parol, that each monthly portion of the rent should be paid in advance, was properly excluded, because it tended to alter and vary a written contract complete upon its face."

We quote the following excerpt from the case of *Liebe v. Nicolai,* 30 Ore. 364, 48 Pac. 172, which shows the antiquity of the rule and the reasons underlying it:

"The proposition that the term was forfeited by reason of the rent being in arrears for more than thirty days is predicated upon the theory that the several installments thereof were payable monthly in advance. The clause of the lease from which it is claimed this fact is made manifest is as follows: 'And the said lessee, for himself, executors, and administrators, does hereby covenant to and with the said lessors, their heirs, and assigns, to pay the said rent in monthly payments of $75 each, the first payment thereof to be made on the 1st day of January, 1892.' It will be remembered that the first installment of rent became payable on the first day of the term, but, there being no contract that the other payments were to be made in advance, can it be said, from an inspection of the lease, that such a construction was contemplated by the parties to it? The rule seems to be well settled that when the lease contains no covenant fixing the time when the rent shall become due, it is payable at the end of the term: *Boyd v. McCombs,* 4 Pa. St. 146; *Garvey v. Dobyns,* 8 Mo. 213; *Ridgley v. Stillwell,* 27 Mo. 128; *Duryee v. Turner,* 20 Mo. App. 34; *Bordman v. Osborn,* 23 Pick. 295; *Dixon v. Niccolls,* 39 Ill. 372 (89 Am. Rep. 312). In *Menough's Appeal,* 5 Watts & S. 432, premises were leased for one year, no time being specified for the payment of the rent, and in an action to recover the same, it was held not to be payable until the end of the term. Sergeant, J., in rendering the decision of the court, says: 'No time being stipulated for the payment of rent, it was by law payable at the end of one year, and not before, rent being in its na-

ture a reditus or return for the enjoyment of the annual profits of the land.' In *Holland v. Palser*, 2 Starkie, 161, a house had been demised for a term of twelve calendar months, at the yearly rent of eighty pounds, three months' rent to be paid in advance on taking possession. The tenant having paid the rent for two quarters, an action was brought by the landlord to recover the amount due for the third quarter before it had expired, and the question presented was whether, under the terms of the agreement, the rent for the third quarter had accrued before the action was commenced. Lord Ellensborough, in deciding the case, held that if it had been intended that each succeeding quarter's rent should be paid in advance, it would have been easy to have said 'always paid in advance.' So, too, in the case at bar, the intention of the parties must be sought for in their agreement, and, looking to this instrument alone for that purpose, it cannot be said that the rent, except for the first month of the term, was to be paid in advance. Courts very much dislike, even in actions at law, to enforce forfeitures, and will do so only in cases where the parties have clearly stipulated therefor, or where the character of the property affected by the agreement seems to demand it. Such is the general rule, in view of which we are of the opinion that the rent was not payable in advance, except as to the first installment; and hence the rent for March was not in arrear thirty days on the 4th of the next month, when Stebinger executed the mortgage."

See, also, 36 C. J., Landlord and Tenant, § 1197; Tiffany, Landlord and Tenant, § 172.

We forbear further citation of authority because the matter is not one of first impression in this state. The rule was stated and applied at least twenty-five years ago in *Keene v. Zindorf*, 81 Wash. 152, 163, 142 Pac. 484:

"Counsel's theory seems to be that, to extend the lease beyond the original ten-year term, required not only an election so to do on the part of respondent, but also a tender of the first year's rent amounting to $1. . . . Counsel's contention finds a complete answer

in the fact that the annual rent of $1 per year for the extended term is not payable in advance. *The law seems to be well settled that, in the absence of an agreement to pay in advance, rent is payable at the end of each rental period.* Such rental period being one year, under the extended term, manifestly no rent in any event would become due until the end of the first year of the extended term." (Italics ours.)

For the purposes of this case, the question as to what extent equitable considerations may be resorted to in an unlawful detainer action thus becomes wholly academic. The common law says that the rent reserved in the lease for the month of January, 1939, did not become due until January 31st. The appellant, therefore, owed no rent to the respondents when they served it with notice on January 16th to quit or pay. In fact, the appellant was at no time in default; for, as admitted in respondents' brief, it tendered the exact amount of the January rent on January 28th.

The appellant is entitled to have the case dismissed by the trial court and to recover its costs, including a reasonable attorney's fee, as per the stipulation in the lease. It is so ordered.

BLAKE, C. J., MAIN, STEINERT, and JEFFERS, JJ., concur.