[No. 28767. *En Banc.* February 15, 1943.]

OMER C. BRUN, *Respondent,* v. NORTHERN LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 134 P. (2d) 84.

*Preston, Thorgrimson, Turner, Horowitz & Stephan,* for appellant.

*John E. McCoy* and *Gus L. Thacker,* for respondent.

GRADY, J.—This action was brought by Omer C. Brun against the Northern Life Insurance Company to recover on two insurance policies naming the plaintiff as beneficiary. There was a trial before the court without a jury, resulting in a judgment for the plaintiff for the face of the policies, less an unpaid premium of $31.26, from which judgment this appeal has been taken.

On July 31, 1940, at the solicitation of an agent of the appellant, Richard J. Brun made application for a two thousand dollar life insurance policy, with additional automobile accidental death benefits thereunder, in the sum of two thousand dollars, and a policy for indemnity, in case of accident, with death benefit of two thousand dollars.

The application was accepted and, under date of August 6, 1940, policy No. 233-186 was issued covering death benefit of two thousand dollars and automo-

bile accidental death benefit of two thousand dollars, and, on the same date, there was issued policy No. A 233-186, covering accident and sick benefits and death benefit, in case of accidental death, in the sum of two thousand dollars. We shall hereafter refer to the former as the life policy and the latter as the accident policy.

The application is so interwoven with the two policies as to be a part of the insurance contracts. It provides for the payment of a combined premium as follows: "Annual premium $75.64 payable in 12 Installments of $6.81 each."

The life policy insures the life of the insured and contains the following provisions:

"THIS POLICY is issued in consideration of the Application and of the payment to the Company of an Annual Premium of Thirty-Eight and 74/100 Dollars on the date hereof, and like payment on the 1st day of August in each and every year during the life of the Insured.

"GRACE—Thirty-one days will be allowed as a grace period for the payment of premiums falling due hereon after the initial premium has been paid in cash, during which period this policy shall be in full force.

"PREMIUMS—The first and all other payments due the Company hereon are payable in advance in cash at the Home Office or to a duly authorized agent holding the Company's official receipt therefor, signed by the President or Secretary of the Company. Any annual premium due hereunder may be paid in semi-annual or quarterly installments at the Company's published rates, and such payment in advance shall be a condition precedent to the validity of any claim under this policy. In event of lapse from non-payment of any premium or part of premium when due, all insurance hereunder shall immediately terminate, and all former payments hereon be forfeited to the Company, except as modified by the foregoing 'Grace' Provision and by the Non-Forfeiture Provisions elsewhere herein."

The accident policy contains the following provisions:

"This policy is issued in consideration of the premium of Three and 05/100 Dollars covering the term of One month, beginning on the 1st day of August, 1940, against loss caused by bodily injuries, and for the term of 15 days, beginning on the 15th day after the aforesaid date against loss caused by sickness or disease. The aforesaid terms begin and end at twelve o'clock noon, Standard time, of the place where the Insured resides.

"GRACE—Thirty-one days will be allowed in the payment of premiums hereon after the initial premium has been paid in cash, during which period the policy shall be in full force.

"(3) (c) If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

Although the accident policy, on its face, covers only one month, the parties intended that it should be a continuing one so long as its conditions were complied with by the insured and until canceled by the insurer, as therein provided.

The above-quoted portions of the policy with reference to premiums and their payment are inconsistent with the provisions relating to the same subject as set forth in the application, but it is apparent from the record and the course of dealing between the parties that it was their intention that the premium should be paid as set forth therein. The total premium installment of $6.81 was divided by allocating $3.76 to the life policy and $3.05 to the accident policy.

When the application for the policies was made, the sum of $6.81 was paid to the agent of appellant. On October 8, 1940, appellant wrote a letter to the insured,

claiming past-due installments for the months of September and October of $13.62; and, while no direct claim was made to the insured that the policies had lapsed, on the back of the letter was a printed form of application for reinstatement for the insured to fill out. The letter also stated that, upon receipt of the application, together with a remittance of the past-due payments, the appellant would consider reinstatement. The insured, on October 9th, filled out the form, but did not sign it, and sent it to appellant, with a check for $6.81, and the following letter:

"In regards to your letter I am inclosing $6.81 in a check which is to be applied to the Sept. In. I will send the Oct. payment on or before Oct. 15. I thank you."

In due course, the check was cashed by appellant. No other payments of premium were made by the insured. On November 28, 1940, the insured came to his death as the result of an accident.

It is the contention of the appellant that a premium of $6.81 became due on September 1, 1940, and, not being paid, the policies lapsed upon the expiration of the grace period of thirty-one days thereafter; also, that it did not accept the money received from the insured on October 12, 1940, as payment of any installment, but placed the same in its suspense account to await the final result of negotiations with the insured relating to reinstatement of the policies, and, the negotiations never being completed, on December 12, 1940, it returned the money to the insured. On account of the previous death of the insured, the envelope containing the check was returned to appellant.

The respondent contends that the life policy was in force on November 28, 1940, the date of the death of the insured, and argues that the appellant, having issued and delivered the life policy, thereby extended

credit to the insured for the payment of the amount of the annual premium provided for therein; also, that the clause in the application, "Annual premium $75.64 payable in 12 Installments of $6.81 each," coupled with the statement of the agent of the appellant, made at the time of taking the application of the insured, that the premium could be paid at any time during the following year, means that the insured could have paid the remaining eleven installments any time during the current year and thus keep the life policy in force.

The contention of the respondent as to the accident policy is that $3.05 of the check for $6.81, which the insured mailed to the appellant on October 9th, was accepted by it as an installment payment; that this amounted to a reinstatement of the accident policy as of October 9th; that this policy then became in force for one month, or until November 9, 1940, and, the insured having died within the thirty-one days' grace period thereafter, the respondent is entitled to recover the face of the policy.

██ Construing the application and the policies together and considering the course of conduct of appellant and insured with reference to the time the combined premium was due on the two policies, it is our opinion that it was the intention of the parties that the premium should be payable in twelve monthly installments of $6.81 each, and that, as no time was provided as to the date of each monthly payment, the insured had until the last day of each month within which to make the payment for that current month. In so far as the printed portions of the policies relating to the payment of premiums are inconsistent with the time of installment payment, as set forth in the application, the latter must prevail, as it states the true agreement between the insured and the agent of the

appellant, made within the scope of his authority and subsequently ratified by the appellant.

■ The provision in the application as to the times of payments of premium is not ambiguous. It is, however, incomplete, in that it does not set forth a date in each month when the monthly installments of premium shall be paid, and it is necessary that the court construe this provision. The rule of law applicable to such a situation as this is that, where a payment is to be made in monthly or other periodic installments, and no date is fixed by the agreement of the parties on which each installment shall be paid, the debtor has the right to make the installment payment at any time during that current month or period, and is not in default until the expiration of the last day of such month or period.

We have not had cited to us, nor have we found, any adjudicated case that has considered the precise question as to the payment of installments of an insurance premium. But the principle has been recognized in *Bernard v. Triangle Music Co.*, 1 Wn. (2d) 41, 95 P. (2d) 43, 126 A. L. R. 558, in which this court said, p. 50:

"It cannot be held that the covenant, as it stands, is incomplete or ambiguous and, therefore, subject to constructive interpretation. We are legally bound to treat it as complete and certain, for the common law, in so far as it is not inconsistent with our constitution and laws nor incompatible with our institutions, is prescribed as the rule of decision in all the courts of this state; and it is an old and well-established rule of the common law that, when rent is reserved in a lease and no time is specified for its payment, it becomes due on the last day of the period with respect to which it is reserved, whether that period be a week, a month, a quarter, a year, or a term of years."

In discussing the time of payment of an annuity under an agreement which provided for payments an-

nually, the court said in *Mower v. Sanford,* 76 Conn. 504, 57 Atl. 119, 63 L. R. A. 625, 100 Am. St. 1008:

"An agreement to pay a fixed sum annually, or each year, in the absence of language modifying the ordinary meaning of these terms, cannot fairly be construed as a promise to pay such sum annually in advance, or at the commencement of each year. A contract for the payment of money in fixed instalments, containing no other provision for the time of payment of such instalments than that they are to be paid annually, is lawfully performed by the payment of a single installment at the end of each year."

The contract now before the court does not provide that the installments shall be paid in advance, and the fact that the first installment was paid by the insured when the application for insurance was made, does not alter the case, nor does it fix a time for, or affect, the time of payment of the future installments. If the appellant had decided that the monthly payments were to be made on the first or any other date of the month, it should have so provided in the contract.

The same principle has also been recognized in statutes providing for the publication of notices "once a week" for a given period of time. If no day of the week on which the publication is to be made is specified, it may be made on any day of that week. *King County v. Seattle,* 7 Wn. (2d) 236, 109 P. (2d) 530. As the time of publication is a jurisdictional step in a proceeding, and if such publication can be made on the last or any other day of the current week, then the reason why a contractual installment payment may be made on the last or any other day of the month or period is all the more cogent.

The insured made the August, 1940, payment of premium when the application was taken. He sent the September payment to the appellant October 9, 1940. This payment was accepted by the appellant.

It was its duty to accept it as the September payment, even though made in October, because the September payment was not due until September 30th and, on October 12th, when it was received by appellant, the grace period had not expired. The insured had until October 31st within which to make the October payment. This payment was never made, but the grace period extended it thirty-one days after October 31st, and, the insured having died as the result of an accident before the expiration of the grace period, the policy was in force at the time of his death.

What we have said applies also to the accident policy, and we hold that it was in force at the time of the death of the insured.

The conclusions we have reached make it unnecessary to decide the other questions raised and discussed in the briefs and during the oral arguments made to the court.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, BEALS, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—The insurance policies involved in this action consisted of a life policy and an accident policy and were issued upon a single written application made therefor by the insured, Richard J. Brun, on July 31, 1940. The application expressly provided that it was to become a part of any contract of insurance which should be thereafter issued to the applicant. Pursuant to that provision, the application was attached to the life policy, No. 233-186, issued to the insured on August 6, 1940. On the same day, the accident policy, No. A233-186, was also issued to the insured.

The life policy contained a provision on its front page reading as follows:

"THIS POLICY is issued *in consideration of the Application* and of the payment to the Company of an *Annual* Premium of Thirty-Eight and 74/100 Dollars on the date hereof, and like payment *on the 1st day of August in each and every year* during the life of the insured." (Italics mine.)

The written application, which was attached to the life policy but which covered both the life policy and the accident policy, provided for an annual premium of $75.64, payable in *twelve installments* of $6.81 each. It is conceded by all parties that, out of these installments, $3.76 was to be allocated to premium on the life policy and $3.05 to premium on the accident policy.

The life policy moreover specifically provided, under the heading of "Premiums," *that the first and all other payments due the company under the policy were payable in advance in cash.* Upon the outside cover of that policy there appeared, with other descriptive matter, this statement: "Payable August 1st Annually OR *$3.76 the 1st of each month*" (Italics mine), followed by the monition:

"READ your policy and notify the Company immediately in event of any error in the policy or copy of application."

The accident policy provided for a payment of $3.05 for the term of one month only, but, as indicated in the majority opinion, the parties intended that it should be a continuing policy so long as the insured complied with its conditions and until canceled by the insurer. The contract of insurance in its entirety thus covered both policies and called for monthly payments of $6.81, as provided by the terms of the application attached to the life policy.

I fully agree with the majority opinion in holding that it was the intention of the parties that the premiums should be paid in *twelve monthly install-*

*ments* of $6.81 each, rather than that the premiums might be paid in a lump sum at any time during the current year, as now contended by the respondent. I cannot agree, however, with the majority in holding that the monthly installments could be paid as late as the *last* day of each month, with an added thirty-one days' grace for such payment.

The provisions of the policies, read in connection with those of the application, clearly provide that *all* the premium payments were to be made *in advance on the first day of each month,* if paid in installments, and that the thirty-one days of grace ran from that date only, and not from the last day of the month. Not only do the terms of the insurance contract taken as a whole indicate that the premiums were to be paid in advance, but upon the cover of the policy, in prominent display, that requirement was specifically called to the attention of the insured. Furthermore, the subsequent negotiations between the company and the insured demonstrate that both parties recognized and acted upon that interpretation and understanding of the insurance contract. On October 8, 1940, when the two monthly installments for September and October, amounting to $13.62, were past due, the company wrote to the insured asking him to fill out the prescribed form of application for reinstatement contained on the back of the company's letter. The first provision of that application reads:

"I, Richard J. Brun, holder of the above numbered policy of insurance which *lapsed for non-payment of the premium due on the 1st day of September, 1940,* do hereby apply for reinstatement of Policy No. 233-186 & No. A233-186 only and make the following statements." (Italics mine.)

The insured filled out, in his own handwriting, the answers to a list of eleven questions contained in the

application for reinstatement and sent it to the company, accompanied by a letter enclosing a check for $6.81 (one-half of the past due premiums) and promising to send the balance on or before October 15, 1940. Thus the insured himself recognized that the policy had lapsed for nonpayment of premium on the first day of September.

It is true, as stated in the majority opinion, that the insured did not sign the application for reinstatement, although it was otherwise filled out by him. That oversight, however, is readily accounted for by the fact that underneath the line for his signature appeared his name in typewriting, which he undoubtedly understood to be sufficient. In any event, he received the notice, recognized it, and acted upon it. Because of the insured's failure to personally sign the application, however, the company sent him a new application for his written signature and at the same time called his attention to the fact that, even if the policy were then reinstated, the October installment would be past due. The reinstatement was never completed nor was the October premium payment ever made.

The remittance of $6.81, made by the insured on October 9th, was not credited by the company to the payment of the premium for September, but, as appears by endorsement on the check itself, was credited to the suspense account pending the company's approval of the application for reinstatement.

If the check for $6.81 was never applied to the payment of the September premium, then the policies clearly lapsed not later than October 3, 1940. If, on the other hand, it should for any reason be held that the check should have been applied to the premuim due for that month rather than credited on the suspense account, still the policies lapsed for nonpayment of the October 1st premium within the grace period of thirty-

one days thereafter. The insured never at any time made the October payment.

I think that the judgment should be reversed and the action dismissed.

ROBINSON and JEFFERS, JJ., concur with STEINERT, J.

MALLERY, J. (dissenting)—I agree with everything said in the dissenting opinion of Steinert, J.

In addition, I desire to make the following observations: Even if everything said in the majority opinion be accepted as true, including the following matter quoted:

"It is our opinion that it was the intention of the parties that the premium should be payable in twelve monthly installments of $6.81 each, and that, as no time was provided as to the date of each monthly payment, the insured had until the last day of each month within which to make the payment for that current month,"

still their conclusion does not follow.

To say that insured *had the right to pay* the October premium up to and including October 31st is certainly not the equivalent of saying that he did in fact pay it. It is admitted by all that, in fact, he did not pay it. He paid for September and no more. Had he ever paid the premium for October, even on the last day thereof, he would then have been covered by the grace period to December 1st and hence could have recovered. But September was the last month that he ever paid for at any time. How then can it be said that a grace period of thirty-one days, beginning at the end of the last month paid for (i. e., September) would include the 28th day of November?

The judgment should be reversed.