**ISQUITH v. ATHANAS et al.**

No. 104.

Municipal Court of Appeals for the District of Columbia.

Sept. 2, 1943.

Jacob N. Halper, of Washington, D. C., for appellant.

Charles W. Proctor, of Washington, D. C. (Henry S. Goodman, of Washington, D. C., on the brief), for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

In March, 1943, appellees filed an action in the Landlord and Tenant Branch of the Municipal Court for the possession of certain real estate, claiming that appellant's lease had been terminated by nonpayment of rent amounting to $650, due and payable during the months of November, 1942 to February, 1943, inclusive.

At the trial the following facts were developed:

Appellees own a building, the basement, first and second floors of which were used for commercial purposes; the third floor for housing accommodations. On January 1, 1941, the building was under lease to one Columbus for a term of five years which began July 1, 1940, and was to terminate June 30, 1945. The lease provided for the payment of $9,450 rent for the term, which amount it stipulated was to be paid in monthly installments of $100 during the first six months of the lease, $125 during the second six months, $150 during the following year and $175 during the remaining three years.

Appellant's lease of the same premises began April 1, 1942. It was for a term of three years and three months, expiring June 30, 1945. The rent was stated to be the sum of $6,750, payable in monthly installments of $150 to June 30, 1942, and of $175 to the end of the term.[1]

Appellant admitted his failure to pay installments of rent in the sums specified in his lease. But he claimed that since a part of the demised premises was then occupied for housing accommodations, the rent was "frozen" as of January 1, 1941, the effective freezing date under the Rent Act, at $125 per month; that he was therefore entitled to a credit of the amounts paid by him from April to November, 1942, in excess of $125 per month; that this, and other credits claimed by him, were applicable to the payment of rent for the months of November, 1942, to February, 1943, whereby the rent for those months had been paid in full.

The pertinent section of the District of Columbia Emergency Rent Control Act, Code 1940, § 45—1602, provides:

"(1) On and after the thirtieth day following the enactment of this Act, * * *

---

[1] It will be noted that the present lease was in effect a substitution of appellant for the remaining three years and three months of the original lease, under the same terms applicable during this period to the former tenant.

maximum-rent ceilings and minimum-service standards for housing accommodations excluding hotels, in the District of Columbia shall be the following:

"(a) For housing accommodations rented on January 1, 1941, the rent and service to which the landlord and tenant were entitled on that date."

It is unnecessary for us to consider whether and to what extent this section is applicable to a building of the character of the demised property, leased as a whole.

▆▆ A lease for a term of years creates an estate in the grantee. Code 1940, Sec. 45—818. It may be subject to such conditions as the instrument imposes. The rent reserved may be a lump sum, payable either at the commencement of the term or at its end. Unless otherwise provided rent is not due until its termination.[2]

Term rent may be and usually is divided into installment payments, to be made at such intervals and in such amounts as suit the convenience and requirements of the parties. The amounts and intervals between payments may vary at different periods of the year as in the case of seasonal property. And, where tenants are starting or taking over a commercial business, it is not unusual for landlords to adjust installment payments as in the Columbus lease, wherein the payments began in an amount little more than a half of that required during the final period.

▆ If $125, the amount paid or payable by Columbus on January 1, 1941, is to be regarded as monthly rent in the ordinary sense, appellant's position is correct; that amount would control throughout the remainder of the tenancy notwithstanding the graduated schedule of payments arranged in the lease, and it would continue thereafter during the emergency unless changed by order of the Rent Administrator. But we think it is clear that such $125 payment was not monthly rental. It was simply one of the installments which happened to fall due on that date, as a part of the total sum of $9,450 which represented the consideration for the demise of the premises. In reality it was for that sum that Columbus had purchased an estate in the property. And an installment due under such purchase cannot be regarded as an ordinary monthly

rental-payment under the freezing clause of the Rent Act.

Such payments during any one period of the lease do not, except by coincidence, reflect rental value. We therefore find no basis for the credit of excess rent claimed by appellant.

Affirmed.

---

[2] Bernard v. Triangle Music Co., 1 Wash. 2d 41, 95 P.2d 43, 126 A.L.R. 558; Chicago Title & Trust Co. v. Illinois Merchants' Trust Co., 329 Ill. 334, 160 N.E. 597; Castleman v. Du Val, 89 Md. 657, 43 A. 821.