[No. 5327–1. Division One. May 8, 1978.]

PAUL STEVENS, *as Administrator, Respondent,* v.
THE NATIONAL LIFE ASSURANCE COMPANY
OF CANADA, *Appellant.*

*Preston, Thorgrimson, Ellis, Holman & Fletcher* and
*Charles Peery,* for appellant.

*Matsen, Cory, Matsen & Sprague* and *Patrick J. Layman,* for respondent.

DORE, J.—Paul Stevens, administrator of the estate of
George B. Stevens, deceased, brought an action against The
National Life Assurance Company of Canada for $20,000

representing the proceeds of a life insurance policy on George Stevens' life. The insurance company defended contending that the semi–annual premium had not been paid in advance as required by the policy and had lapsed at the time of Stevens' death. The trial judge granted summary judgment for plaintiff in the amount of the life insurance proceeds minus a sum equal to the last premium payment. Defendant appeals.

Affirmed.

### STATEMENT OF THE CASE

George B. Stevens, now deceased, made application for an insurance policy from The National Life Assurance Company of Canada (hereinafter referred to as "National") through an independent insurance agent. The application dated September 5, 1974, was for a 10–year decreasing term policy in the amount of $20,000 with semi–annual premiums, a waiver premium benefit, and an automatic loan privilege. Stevens paid $111.50 with his application. On October 25, 1974, National executed policy No. 554054 in the name of George B. Stevens in the amount of $20,000 with a 10–year nonparticipating decreasing term policy with an annual premium of $273.60. The premium language in the policy read:

> $273.60 payable on 25th day of October, 1974 and annually thereafter until eight full years' premiums shall have been paid, or until the prior death of the insured.

Stevens' estate was listed as the beneficiary of the policy. The policy made no direct reference to the waiver of premium benefit and the automatic premium loan privilege.

Stevens was a bartender and the issued life policy made no provision for an increased risk rating because of his occupation. Apparently it was necessary for Stevens to agree in writing to the additional risk premium because on November 5, 1974, some 11 days after the execution of the policy, Stevens signed a written authorization to amend his application as follows:

Policy No. 544,054

AMENDMENT OF APPLICATION

I, GEORGE B. STEVENS hereby amend the application for Life Insurance made to THE NATIONAL LIFE ASSURANCE COMPANY OF CANADA on the 5th day of Sept. 1974 in the manner provided below and understand and agree that this amendment shall become part of the said application, the information in which, in all other respects, is confirmed hereof.

Part I, Question 5, of said application shall be amended as follows:

5. Plan—10 Year Reducing Term—Non Participating Sum Insured—$20,000.00

| | |
|---|---:|
| Regular Premium | $213.60 |
| Extra Occupational Premium | 60.00 |
| TOTAL ANNUAL PREMIUM | $273.60 |

Premium to be paid $138.80 Semi–Annually.

I understand and agree that the TOTAL DISABILITY BENEFIT WAIVER OF PREMIUM will not be included in this policy.

SIGNED AT_____this 26th day of Nov. 1974

/s/ George B. Stevens

Under the amendment Stevens paid an additional $27.30 for a total premium payment of $138.80 (the amount of the semi–annual premium). The amendment was silent as to the automatic loan privilege. Other than the initial premium payment of $138.80, no additional premium payment was made prior to George Stevens' death. Furthermore, no billing notice nor late payment offer notice was ever sent by National at any time to Stevens.

On September 20, 1975, Stevens died, 35 days before the end of the first year policy period on October 25, 1975. The attorneys for the estate of Mr. Stevens wrote to National at its head office in Glens Falls, New York, on October 31, 1975, advising National of George Stevens' death and requesting payment of benefits. National refused, claiming Stevens' policy had lapsed for nonpayment of the April 24, 1975, semi–annual premium.

In June 1976 the administrator of the estate commenced an action against National to recover the proceeds of Stevens' policy No. 544054.

## ISSUE

Whether National's life insurance policy No. 544054 in the face amount of $20,000 issued to George Stevens was in full force and effect when he died on September 20, 1975, or whether such policy had lapsed for failure of payment in advance of the semi–annual premium of $138.80 on April 25, 1975?

## DECISION

This case turns on a very simple proposition. If the semi–annual premium was payable in advance by Stevens on April 25, 1975, and as admittedly he failed to make such payment, his policy lapsed and it was not in effect at the time of his death. On the other hand, if the Stevens estate would be entitled to make the April 25, 1975, semi–annual premium payment at any time within the 6–month period up through October 25, 1975, then such policy was in full force and effect at the time of his death.

We hold that the Stevens estate could have made the semi–annual premium payment on George Stevens' life insurance policy at any time on any day between April 25, 1974, up to and including October 25, 1975, and consequently such policy was in full force and effect at the time of his death.

Pertinent provisions of Stevens' life insurance policy provide:

THE CONTRACT—The consideration for this policy is the application, a copy of which is attached hereto and made a part hereof, and the payment of premiums as herein provided. *This policy and the application therefor constitute the entire contract between the parties and all statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties.* No statement shall avoid the policy or be used in defence to a claim under it unless contained in the written application, and a copy of the same is attached hereto when issued. *No modification of this contract shall be made except over the signature of the President or Secretary.* Whenever any notice, election, consent, proof or request is to be made or given to

or filed with the Company hereunder, the same must be in writing and must be so given to or filed with the Company at its United States Head Office in Glens Falls, New York.

. . .

PREMIUMS—This contract is based on the assumption of the payment *in advance* of an annual premium but the Company may agree to accept payment of such premium in instalments payable half–yearly or oftener *in advance* in amounts determined by the Company's published rates therefor at the date hereof. In the interpretation of this policy, the term "premium" shall, wherever the context requires, include such instalments whenever payable hereunder.

(Italics ours.)

On the original application signed by Stevens he checked that the premium was to be paid semi–annually. The application did not say "in advance." It said "S–A", *i.e.*, semi–annually, and made no reference to paying the premium in advance.

Approximately 1 month after the "effective date" of the policy and after Stevens fully paid his first semi–annual premium, the application was amended. The pertinent portions were typewritten and provided as follows: "Premium to be paid $138.80 Semi–Annually." The words "in advance" were noticeably absent. The result of the amended application signed by Stevens was two–fold: (1) to change the mode of premium payment from annually in advance before the 25th day of October, to semi–annually with no specified due date; and (2) to delete the total disability benefit waiver of premium.

National received two valuable considerations in exchange for the "amendment of application" by Stevens. Stevens agreed to pay the additional premium of $27.30 and he also gave up the total disability benefit waiver of premium. In return, on the face of it, Stevens supposedly was given the right to pay his semi–annual premium at any time during the 6–month period or specifically in this case,

from any day between April 25, 1975, through October 24, 1975.

Under the written terms of National's policy No. 544054, the application of an assured becomes part of the insurance contract.

■ We hold that the language of Stevens' *printed* insurance policy providing for "semi–annual payments *in advance,*" was amended out of the policy by the *typewritten* November 26, 1974, amendment to the application which deleted the words "in advance" and merely provided for semi–annual premium payments.

6 G. Couch, *Cyclopedia of Insurance Law* § 31.27 (2d ed. 1961) states:

> The periods or times at which premiums are to be paid is a matter determined by the contract of the parties. Where the payment of premiums has been lawfully changed from an annual to a quarterly basis, the insurer cannot place them back on an annual basis so as to bind the insured without his consent. Conversely, the policy may give the insured the option of changing the period of payment. For example, where the policy specifically provided that the premiums may be paid in advance in semi–annual or quarterly instalments, no further consent of the company for quarterly payments was necessary.
>
> Where a payment is to be made in monthly or other period instalments and no date is fixed by agreement on which each instalment shall be paid the debtor has the right to make the instalment payment *at any time during that current month or period,* and is not in default until the expiration of the last day of such month or period.

(Italics ours.)

Couch cites as his authority for the above proposition the Washington case of *Brun v. Northern Life Ins. Co.,* 16 Wn.2d 564, 134 P.2d 84, 87 (1943). In the *Brun* case the insurance application provided that "Annual premium $75.64 payable in 12 installments of $6.81 each." The

printed provisions of the life insurance policy in *Brun* provided that premiums were to be paid *in advance*. The language of the policy of the *Brun* case was set forth at page 566:

"THIS POLICY is issued in consideration of the Application and of the payment to the Company of an Annual Premium of Thirty–Eight and 74/100 Dollars on the date hereof, and like payment on the 1st day of August in each and every year during the life of the insured.

"GRACE—Thirty–one days will be allowed as a grace period for the payment of premiums falling due hereon after the initial premium has been paid in cash, during which period this policy shall be in full force.

"PREMIUMS—The first and all other payments due the Company hereon are payable in advance in cash at the Home Office or to a duly authorized agent holding the Company's official receipt therefor, signed by the President or Secretary of the Company. Any annual premium due hereunder may be paid in semi–annual or quarterly installments at the Company's published rates, and such payment *in advance* shall be a condition precedent to the validity of any claim under this policy. In event of lapse from non–payment of any premium or part of premium when due, all insurance hereunder shall immediately terminate, and all former payments hereon be forfeited to the Company, except as modified by the foregoing 'Grace' Provision and by the Non–Forfeiture Provisions elsewhere herein."

(Italics ours.)

In *Brun* the life insurance policy was issued simultaneously with an accident policy on the insured's life. The pertinent portions of the accident policy were set forth at page 567:

"This policy is issued in consideration of the premium of Three and 05/100 Dollars covering the term of One month, beginning on the 1st day of August, 1940, against loss caused by bodily injuries, and for the term of 15 days, beginning on the 15th day after the aforesaid date against loss caused by sickness or disease. The aforesaid terms begin and end at twelve o'clock noon, Standard time, of the place where the Insured resides.

"GRACE—Thirty–one days will be allowed in the payment of premiums hereon after the initial premium has been paid in cash, during which period the policy shall be in full force.

"(3) (c) If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

The court on page 567 continued:

*The above–quoted portions of the policy with reference to premiums and their payment are inconsistent with the provisions relating to the same subject as set forth in the application,* but it is apparent from the record and the course of dealing between the parties that it was their intention that the premium should be paid as set forth therein. The total premium installment of $6.81 was divided by allocating $3.76 to the life policy and $3.05 to the accident policy.

(Italics ours.)

In *Brun* the insurance company took the same position as National is contending in the subject case, that inasmuch as the policy language provided the premium should be paid in advance, and the application merely provided for the amount of payment but did not have the language "in advance," the policy language would govern.

In the subject case no notice of premium due or notice of termination or reinstatement letter was sent to the insured, while in *Brun* the insurance company gave notification of default in premium payment not paid in advance and at all times contended payment should be made in advance, during the assured's lifetime.

Our Supreme Court, in granting judgment for the insured in *Brun,* held that as the *application* did not provide for payment of monthly payments *in advance,* the insured had until the last day of each month within which to make the payment for that current month. It was stated at pages 569–71:

Construing the application and the policies together and considering the course of conduct of appellant and insured with reference to the time the combined premium was due on the two policies, it is our opinion that it was the intention of the parties that the premium should be payable in twelve monthly installments of $6.81 each, and that, *as no time was provided as to the date of each monthly payment, the insured had until the last day of each month within which to make the payment for that current month.* In so far as the printed portions of the policies relating to the payment of premiums are inconsistent with the time of installment payment, as set forth in the application, the latter must prevail, as it states the true agreement between the insured and the agent of the appellant, made within the scope of his authority and subsequently ratified by the appellant.

The provision in the application as to the times of payments of premium is not ambiguous. It is, however, incomplete, in that it does not set forth a date in each month when the monthly installments of premium shall be paid, and it is necessary that the court construe this provision. The rule of law applicable to such a situation as this is that, *where a payment is to be made in monthly or other periodic installments, and no date is fixed by the agreement of the parties on which each installment shall be paid, the debtor has the right to make the installment payment at any time during that current month or period, and is not in default until the expiration of the last day of such month or period.*

We have not had cited to us, nor have we found, any adjudicated case that has considered the precise question as to the payment of installments of an insurance premium. But the principle has been recognized in *Bernard v. Triangle Music Co.*, 1 Wn. (2d) 41, 95 P. (2d) 43, 126 A.L.R. 558, in which this court said, p. 50:

"It cannot be held that the covenant, as it stands, is incomplete or ambiguous and, therefore, subject to constructive interpretation. We are legally bound to treat it as complete and certain, for the common law, in so far as it is not inconsistent with our constitution and laws nor incompatible with our institutions, is prescribed as the rule of decision in all the courts of this state; and it is an old and well–established rule of the common law that,

when rent is reserved in a lease and no time is specified for its payment, it becomes due on the last day of the period with respect to which it is reserved, whether that period be a week, a month, a quarter, a year, or a term of years."

In discussing the time of payment of an annuity under an agreement which provided for payments annually, the court said in *Mower v. Sanford,* 76 Conn. 504, 57 Atl. 119, 63 L.R.A. 625, 100 Am. St. 1008:

"An agreement to pay a fixed sum annually, or each year, in the absence of language modifying the ordinary meaning of these terms, cannot fairly be construed as a promise to pay such sum annually in advance, or at the commencement of each year. *A contract for the payment of money in fixed instalments, containing no other provision for the time of payment of such instalments than that they are to be paid annually, is lawfully performed by the payment of a single installment at the end of each year."*

The contract now before the court does not provide that the installments shall be paid in advance, and the fact that the first installment was paid by the insured when the application for insurance was made, does not alter the case, nor does it fix a time for, or affect, the time of payment of the future installments. If the appellant had decided that the monthly payments were to be made on the first or any other date of the month, it should have so provided in the contract.

The same principle has also been recognized in statutes providing for the publication of notices "once a week" for a given period of time. If no day of the week on which the publication is to be made is specified, it may be made on any day of that week. *King County v. Seattle,* 7 Wn. (2d) 236, 109 P. (2d) 530. As the time of publication is a jurisdictional step in a proceeding, and if such publication can be made on the last or any other day of the current week, then the reason why a contractual installment payment may be made on the last or any other day of the month or period is all the more cogent.

(Italics ours.)

Clearly in the subject case, National as far as their billing procedures and administrative practices went, considered the amended application which had deleted all reference to

payment of semi–annual premiums *in advance,* to have amended the printed policy. When April 25, 1975, arrived National sent no billing or notification to Stevens, and when the 31–day grace period expired and according to its contention the policy had terminated, it never notified Stevens either directly or through their agent, that Stevens' policy had been terminated.

National's answers to interrogatories on notification for delinquent premium payments is extremely damaging to their position that the Stevens policy had lapsed on October 24, 1975.

INTERROGATORY No. 1: Please state whether a billing notice was ever sent to George B. Stevens prior to the due date of the April, 1975 semi–annual premium for Policy No. 544054.

ANSWER: *No.*

INTERROGATORY No. 5: Please describe your normal business procedure for preparing and sending billing notices. As part of the answer to this interrogatory, please identify by job title or description the person responsible for each step of your normal business procedure for preparing and sending these notices.

ANSWER: *Commencing with the second premium due under a policy, billings are produced automatically by our Computer System.* For U.S. residents, these billings are produced 3 weeks prior to the premium due date. The billings are produced (1 copy only) in the name of the owner and addressed according to the billing address on the application for insurance. The billings are forwarded to our Policyholders' Service Department where they are checked manually through our computer displays to verify information is correct. *They are then mailed to the policyowner directly including a self-addressed return envelope.*

INTERROGATORY No. 13: Please state whether a late payment offer was ever sent to George B. Stevens following the due date of the April 1975 semi–annual premium for policy No. 544054.

ANSWER: *No.*

INTERROGATORY No. 17: Please describe your normal business procedure for preparing and sending late pay-

ment offers. As part of the answer to this interrogatory, please identify by job title or description the person responsible for each step of your normal business procedure for preparing and sending these late payment offers.

ANSWER: *If premium payment has not been received in full by 30 days after the premium due date, the computer will automatically produce a "Late Payment Offer" notice in four parts.* All copies are forwarded to our Policy Service Department where the original is mailed directly, 2 copies are forwarded to the Branch of record and the remaining is retained.

(Italics ours.) National's own answers to interrogatories admit that the company or at least their computer, at all times took the position that Stevens' life insurance policy had not lapsed prior to his death, and that the April 24, 1975, premium payment could be paid at any time up to and through October 24, 1975. Had the company considered Stevens' semi–annual payment due on April 24, 1975, presumably it would have mailed him a billing automatically 3 weeks prior to the due date at Stevens' home. Thirty days after the due date the premium still not being paid, the company, according to routine procedures, should have automatically mailed Stevens a "late payment offer" notice. In the subject case National mailed neither notice to Stevens, obviously admitting that Stevens could pay the semi–annual premium on any day up to and through October 24, 1975. National's position prior to Stevens' death was the same as plaintiff's in the present litigation.

If George Stevens had not died and had paid his life insurance policy premium any day prior to October 24, 1975, we are confident National would have accepted the premium and mentioned not a word about a lapsed policy.

We hold that the rationale of *Brun* controls the subject case and conclude that the amended application signed by Stevens under date of September 5, 1974, in a typewritten format and which deleted the words "in advance", effectively amended the premium provision of policy No. 544054 which provided for payment of premiums in advance. We

further hold that such provision for the payment of premiums, as amended by the amended application of September 5, 1974, is not ambiguous and needs no interpretation.

We also hold that where payment of premiums are to be made in monthly or other period installments and no date is fixed by the agreement on which each installment shall be paid, the debtor has the right to make the installment payment at any time during that current month or period, and an assured is not in default until the expiration of the last day of such month or period.

George Stevens had the right to pay the semi–annual premium on his insurance policy with defendant on any day between April 25, 1975, through October 24, 1975. Stevens' policy had not lapsed at the time of his death on September 20, 1975, and was in full force and effect.

Judgment is affirmed.

JAMES and CALLOW, JJ., concur.