[No. 3659–6–III.   Division Three.   July 15, 1980.]

CONSUMERS UNITED INSURANCE COMPANY, *Appellant,* v.
JOYCE JOHNSON, ET AL, *Respondents.*

*Roland L. Skala* and *Weeks, Dietzen & Skala,* for appel-
lant.

*Joel E. Smith* and *Gavin, Robinson, Kendrick, Redman & Mays,* for respondents.

McINTURFF, A.C.J.—The appellant, Consumers United Insurance Company (Consumers) appeals from a declaratory judgment determination of insurance coverage liability.

On June 23, 1975, Consumers issued an auto policy to Jon Luster for his 1972 Dodge pickup. The policy period extended for 1 year from 12:01 a.m. June 23, 1975. Mr. Luster paid the $446 premium.

On May 18, 1976, Luster replaced the 1972 Dodge with a 1975 Jeep and immediately informed Consumers of the change. On May 26, 1976, Consumers deleted the 1972 Dodge and by endorsement added the Jeep to the policy effective May 18, 1976. Consumers' underwriting department rerated the policy and assessed an additional premium of $38 payable by June 12, 1976. On May 28, Consumers sent Mr. Luster a notice of cancellation for nonpayment of premium effective June 9, 1976. This was error because the endorsement indicated payment was due by June 12. The insured did not pay the added premium. Unknown to Consumers, he had decided to let the policy lapse after his driver's license was suspended on June 4.

On June 20, 1976—11 days after the purported date of cancellation, but 3 days before the expiration of the original policy, the Jeep was involved in a single-car accident. A high school friend of Mr. Luster's, Alonzo DeLos Santos, Jr., lost control of the Jeep, resulting in the death of a passenger, Vernon Johnson.

On July 26, 1977, Mr. Johnson's wife, Joyce Johnson, the respondent, brought an action for wrongful death against Mr. DeLos Santos and the insured. In March 1978, Consumers commenced this declaratory judgment action for a determination of coverage under the policy. On cross

motions for summary judgment, the court found the accident was covered by Consumers.

Issue: Was the newly acquired automobile automatically covered under the then–existing policy or was the payment of an additional premium a condition precedent to continued coverage?

Consumers contracted to pay on behalf of Mr. Luster his personal and property damage liability obligations "arising out of the ownership, maintenance or use of the owned automobile." Owned automobile is defined as

> (a) a private passenger, . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
>
> . . .
>
> (c) a private passenger, . . . automobile ownership of which is *acquired by the named insured during the policy period provided:*
> (1) it replaces an owned automobile as defined in (a) above

(Italics ours.)

The purpose of this so–called "automatic insurance" clause is to afford the insured owner continuous coverage upon acquisition of a new or replacement automobile during the life of the policy. 12 R. Anderson, *Couch on Insurance* § 45.184, at 235 (2d ed. 1964); Annot., 34 A.L.R.2d 936, § 3 (1954), and cases cited. Strained construction is not required to find the Jeep was an "owned automobile" within the terms of the policy. For this reason, we reject Consumers' argument that acquisition of the new Jeep effected a termination of Luster's original policy. "If the additional coverage provision was not automatic, it would have no purpose". *Hall v. State Farm Mut. Auto. Ins. Co.,* 268 F. Supp. 995, 997 (D.S.C. 1966).[1]

---

[1] In fact, this contention conflicts with the underwriting department's computation of the additional premium. The rate increase for the Jeep totalled $344, which sum was applied against Luster's unearned premium, leaving a balance due of $38 to carry his insurance coverage through the original life of the policy—June 23, 1976.

Typically, an automatic insurance clause requires the insured to notify the insurer of the acquisition of a replacement automobile within a specified period of time—generally 30 days. Notwithstanding this requirement, the majority of courts have held that notice to the insurer is not a condition precedent to liability under the policy for accidents occurring *within* the designated notice period. The giving of such notice is merely a condition subsequent which must be done in order to keep coverage *beyond* the period of automatic coverage.[2]

Here, it is undisputed Mr. Luster gave timely notice of the change in car ownership. But, unlike the typical automatic insurance clause, the Consumers policy contains no notice requirement or time limitation on automatic coverage when a private passenger automobile replaces the "owned automobile" originally insured.[3] Thus, under the expanded language of this policy, the automatic insurance provision must have been intended to extend for the life of the policy. The question remains whether protection under

---

[2]*Hall v. State Farm Mut. Auto. Ins. Co., supra* at 997; *Knotts v. Hardware Mut. Cas. Co.,* 272 So. 2d 788, 790 (La. App. 1973); *Canal Ins. Co. v. C.I.T. Fin. Servs. Corp.,* 357 So. 2d 308, 312 (Miss. 1978); *National Union Fire Ins. Co. v. Falciani,* 87 N.J. Super. 157, 208 A.2d 422, 425 (1965); *McCarty v. Grange Mut. Cas. Co.,* 27 Ohio App. 2d 181, 273 N.E.2d 345, 347 (1971); *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 4 Wn. App. 221, 223, 480 P.2d 537 (1971).

[3]As noted above, an owned automobile is defined in the policy as follows:
    (a) a private passenger, . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded . . .
    . . .
    (c) a private passenger, . . . automobile ownership of which is acquired by the named insured during the policy period, provided
    (1) it replaces an owned automobile as defined in (a) above, *or*
    (2) the company insures all private passenger . . . automobiles owned by the named insured on the date of such acquisition *and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy* issued by the company applicable to such automobile.
(Italics ours.)
    Comparing paragraphs (c)(1) and (c)(2), notice to the insurer may be required under (c)(2), but (c)(1) is applicable to this case because the Jeep replaced the 1972 pickup as defined in the policy. *See* (a) above.

this clause was forfeited for nonpayment of the added premium.

Section 2 of the Consumers policy provides:

> 2. *Premium:* If the named insured disposes of, acquires ownership of, or replaces a private passenger, . . . automobile . . . any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles . . . and a description thereof.

Section 2 contains no language making payment of the added premium a condition precedent to continued coverage. This would appear to be in conformity with the operation of the automatic insurance clause.

As the authorities have observed:

> The fact that the insurer may charge an additional premium for the extension of the coverage beyond the notice period does not mean that the making of such payment is a condition precedent to coverage during the initial period of automatic coverage. Such a construction of the additional premium clause would destroy the operation of the automatic insurance clause. It must therefore be interpreted according to its exact letter; to have no effect with respect to the initial automatic coverage period, to be operative only with respect to subsequent coverage and then only after a demand has been made for the payment of an additional premium.

(Footnotes omitted.) 12 R. Anderson, *Couch on Insurance* § 45.196, at 244 (2d ed. 1964); *see also* 34 A.L.R.2d 936, § 8 (1954); *Merchants Mut. Cas. Co. v. Lambert,* 90 N.H. 507, 11 A.2d 361 (1940).

In *Stevens v. National Life Assurance Co.,* 20 Wn. App. 20, 25–32, 578 P.2d 1327 (1978), the court held that when no date is fixed by the policy for the payment of period installments, the insured has the right to make payment at any time during the current period and a default cannot be predicated upon the failure to make the premium payment until the expiration of that period.

The same principle applies here. With no notice requirement or time limitation, the automatic insurance provision

extended for the life of the policy. With no specific date for payment, the additional premium was payable at any time before the end of the policy period. Therefore, Consumers' purported notice of cancellation for nonpayment of premium by June 12 was not effective to deny coverage for the accident which occurred 3 days before the expiration of the policy period on June 23, 1976.

The court was correct in finding the policy provided coverage according to its terms. This is true notwithstanding Luster's unilateral decision to let the policy lapse because his driver's license was suspended on June 4. "An intent of one party to a contract not communicated to the other party will not serve to modify that contract." *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 4 Wn. App. 221, 223, 480 P.2d 537 (1971).

ISSUE: Whether the policy's restrictive endorsement excluded coverage for the driver of Luster's car.

One of the endorsements attached to the Consumers policy provided:

> *Caution—driver limitation endorsement.* It is understood and agreed that such insurance, as is afforded by this policy, shall not apply while any automobile is being operated by any male driver under 25 years of age, other than the named insured, who (a) is a *resident member of the named insured's household* or (b) has regular or frequent use of the automobile.

The driver of Luster's car at the time of the accident was Alonzo DeLos Santos, Jr., age 22. A high school friend of Luster's, DeLos Santos had recently returned from Alaska where he had been working for the past 6 years. Staying initially at a "girlfriend's place," he had access to the key to Luster's apartment which was "someplace to crash." Although DeLos Santos did "put out money," he did not pay rent and there was no regular arrangement for the purchase of groceries. Luster estimated that during the 60 days preceding the accident, DeLos Santos stayed overnight "probably around three or four nights."

■ In the face of this undisputed evidence, the restrictive endorsement was inapplicable. The term "resident" connotes a living arrangement with some degree of permanence, and the term "household" refers to residents who dwell under the same roof and compose a family. *Great Am. Ins. Co. v. Marshall,* 266 F. Supp. 208 (D.S.C. 1967). The DeLos Santos–Luster living arrangement enjoyed neither of these attributes. As the court observed in *Bartholet v. Berkness,* 291 Minn. 123, 126–27, 189 N.W.2d 410 (1971), reversing a jury verdict as a matter of law:

> In cases where we have considered the meaning and application of the term, "member of the same household," we have held that it applies in those instances where there is some blood relationship in the family connection. Under any definition of the term, however, we are unable to say that two bachelors, sharing the same living quarters under conditions such as exist here, are members of the same household. The most that can be said is that they were unrelated friends who resided in the same dwelling. It is obvious from the total fact situation that the arrangement was one which served the convenience and economy of the parties and that each went his own way without regard to any social or family obligation to the other.

■ Consumers' remaining assignment of error was not raised at the trial court level and therefore will not be considered on appeal.

Judgment of the Superior Court is affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied September 12, 1980.

Review denied by Supreme Court November 7, 1980.