[No. 18373-7-I. Division One. August 5, 1987.]

LARRY DAUTEL, ET AL, *Respondents,* v. UNITED PACIFIC INSURANCE COMPANY, *Appellant.*[†]

*James M. Beecher, Theodore H. Millan,* and *Hackett, Beecher, Hart, Branom & Webster,* for appellant.

[†]The original caption of this opinion was *Dautel v. United Pacific/Reliance Insurance Companies.*

*Edward C. Beeksma, Alan R. Hancock,* and *Zylstra, Beeksma, Waller & Skinner,* for respondents.

SCHOLFIELD, C.J.—United Pacific Insurance Company appeals a judgment against it in the amount of $300,000 plus $49,906.85 in interest, in favor of Larry Dautel and Irene, his wife. We reverse.

## FACTS

Donna Kester, United Pacific's named insured, purchased a homeowners insurance policy with an effective date of September 1, 1981. The policy remained in force at least through September 1, 1984.

In the fall of 1982, Kester and her brother, Jay King, who lived in Arizona, made arrangements for King to travel to Washington state to visit with Kester and to go deer hunting. King planned to stay in Washington for a week to 10 days. After King arrived to stay with Kester, he slept on a sofa bed in the living room. King brought only his possessions necessary for a 10–day stay in Washington. King had taken vacation time from work and planned to return to Arizona when his visit was finished.

Kester and King went on the hunting trip, accompanied by Larry Dautel, Kester's long–term boyfriend. Upon their return from the hunting trip, while at Kester's home, Dautel and Kester began arguing, and eventually the argument became physical. Dautel slapped Kester once, and at that point King picked up a hunting rifle. King pointed the weapon at Dautel, who attempted to wrest the rifle from King. Dautel was shot in the abdomen in the ensuing struggle. King was arrested by law enforcement authorities and then released, but the record does not indicate that any charges were filed against him.

Dautel and his wife, Irene, filed suit against King in Skagit County. King admitted his negligence, and a stipulated judgment in the amount of $1 million was entered against

him. King's own homeowners insurer, State Farm, paid its policy limits of $100,000.

The Dautels entered into a covenant not to execute beyond available insurance coverage in favor of King. In exchange, King assigned to the Dautels all of his rights under Kester's homeowners policy with United Pacific. The Dautels filed suit against United Pacific for the limits of Kester's policy $300,000.

Kester stated in an affidavit that King was a guest in her home at the time of the incident. Kester further stated that the purpose of King's trip was a vacation, that it was fully understood that King would return to his home in Arizona at the end of his vacation, and that they did not consider King a resident in Kester's home or an insured under the policy.

Cross motions for summary judgment were filed, and the court granted the Dautels' motion and entered a monetary judgment against United Pacific in favor of the Dautels in the amount of $300,000, plus $49,906.85 in interest.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Hartley v. State,* 103 Wn.2d 768, 698 P.2d 77 (1985). The court must consider the evidence in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 503 P.2d 108 (1972). On review of an order granting summary judgment, the appellate court must "engage in the same inquiry as the trial court." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## RESIDENT OF THE HOUSEHOLD

The issue in this case is coverage. As Kester's relative, King is an insured under the policy only if he is a resident of her household.

Kester's homeowners policy stated in pertinent part:

Definitions

. . .

4. "insured" means you and the following residents of your household:

a. your relatives;

. . .

Coverage F

Medical Payments to Others

. . . This coverage does not apply to you or regular residents of your household other than residence employees. . . .

The Dautels argue that the phrase "residents of your household" is an ambiguous one, requiring interpretation. Insurance coverage is ambiguous when the policy on its face is fairly susceptible to more than one interpretation, all of which are reasonable. An ambiguous insurance policy will be given the reasonable interpretation which is most favorable to the insured. Exclusions from coverage are contrary to the fundamental protective purpose of an insurance policy and will, therefore, be narrowly construed. *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 631 P.2d 947 (1981); *see also Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976).

The Dautels argue that because the policy uses both the word "resident" and the phrase "regular resident" in different places in the policy, each must have a different meaning. The Dautels contend that a regular resident is one who resides in the household of the named insured on a permanent or long–term basis, while a resident is one who lives in the household on a temporary or short–term basis.

Although no cases in Washington have construed the meaning of the term "residents of [the same] household" with regard to a homeowners insurance policy, this phrase has been examined in the automobile liability context. In *Consumers United Ins. Co. v. Johnson*, 26 Wn. App. 795, 614 P.2d 657 (1980), the driver of an insured vehicle was a 22–year–old friend of the named insured. Although the friend generally lived with his girl friend, he had access to

the insured's apartment as "'someplace to crash'". In the 60 days prior to the accident, he had stayed at the apartment "'probably around three or four nights.'" *Consumers United,* at 800.

The court held that the friend was not a resident. The court stated:

The term "resident" connotes a living arrangement with some degree of permanence . . .

*Consumers United,* at 801.

In *Pierce v. Aetna Cas. & Sur. Co.,* 29 Wn. App. 32, 627 P.2d 152 (1981), a divorced father unsuccessfully sought a declaratory judgment that he and his injured son were residents of the same household for purposes of uninsured motorist coverage. The mother had custody of the son and resided with him in the family home. The father, although retaining ownership of the home, visited it only occasionally.

On appeal, the court noted that "resident" is usually defined as "one who dwells or has an abode in a place for a continued length of time . . ." *Pierce,* at 36. The *Pierce* court cited several relevant factors in determining who is a resident of the same household:

(1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging.

*Pierce,* at 38 (citing *Workman v. Detroit Auto. Inter–Ins. Exch.,* 404 Mich. 477, 479, 274 N.W.2d 373, 379 (1979)).

In *General Motors Acceptance Corp. v. Grange Ins. Ass'n,* 38 Wn. App. 6, 684 P.2d 744 (1984), the issue on appeal was whether the driver, the policyholder's son, was insured under the policy as a "resident of the household", since he lived part of the time in an apartment 15 miles from home. On appeal, the court noted that the phrase "resident of the same household" has been interpreted numerous times, and the phrase varies according to individual circumstances, but will be interpreted against the

insurance company and in favor of coverage. *General Motors,* at 9. Utilizing the same factors as set forth in *Pierce,* the *General Motors* court found the evidence supported the trial court's conclusion that the son was a resident of the household.

Other jurisdictions have examined this question with respect to both automobile liability policies and homeowner policies. Turning to the automobile liability policies first, in *Hardware Mut. Cas. Co. v. Home Indem. Co.,* 241 Cal. App. 2d 303, 50 Cal. Rptr. 508 (1966), the named insured's nephew lived regularly with the insured, although he still nominally shared an apartment with a roommate. In determining a definition for "resident", the court stated:

> We think that a resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently.

*Hardware Mut.,* at 311. The court upheld the determination that the nephew was insured under the policy.

In *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis. 2d 27, 197 N.W.2d 783 (1972), a young woman who normally lived at her mother's home went to stay temporarily at her uncle's home to care for his children. On appeal, the court determined that the niece was not a resident of her uncle's household. The court utilized the following factors in rendering its decision:

> [W]hether a person is a resident or member of a household in the present context is dependent upon three factors: (1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship ". . . in contracting about such matters as insurance . . ."

*Pamperin,* at 36–37.

Turning to the context of homeowners insurance policies, in *Iowa Nat'l Mut. Ins. Co. v. Boatright,* 33 Colo. App. 124,

516 P.2d 439 (1973), the issue was whether the father of the named insured was a resident of her household, and thus covered under her homeowners policy, for his negligence in causing a house fire. Apparently the insured's mother and father went to their daughter's home to care for her children while she was hospitalized and then convalescing. They intended to stay for a month or more *or as long as needed.* The parents had full charge of the household and also did household repairs. On appeal, the court held that the father was a resident of the household. In its analysis, the court suggested these factors be considered:

[1] The subjective or declared intent of the individual; [2] the formality or informality of the relationship between the individual and the members of the household; [3] the existence of another place of lodging by the alleged resident; [4] and the relative permanence or transient nature of the individual's residence in the household.

(Citations omitted.) *Iowa Nat'l,* at 127.

In *Puente v. Arroyo,* 366 So. 2d 857 (Fla. Dist. Ct. App. 1979), the issue was whether the child who was staying with a relative during her summer vacation was a resident of that relative's household under the terms of a homeowners insurance policy. In determining that the child was not a resident of the household, the court stated that it found the child to be "no more than a visitor or guest" in the household. *Puente,* 366 So. 2d at 858.

Quoting two previous Florida cases, the *Puente* court stated as follows:

The resident is more than a mere visitor or transient, but lives at a place with additional attachments of such significance as to render that person a more or less consistent part of the community."

*Puente,* 366 So. 2d at 858 (quoting *General Guar. Ins. Co. v. Broxsie,* 239 So. 2d 595, 597 (Fla. Dist. Ct. App. 1970) and *Becklin v. Travelers Indem. Co.,* 263 So. 2d 629, 630 (Fla. Dist. Ct. App. 1972)).

The *Puente* court went on to state that although the

term "resident" should be read inclusively, there is still a requirement that a significant and substantial relationship exist between the individual and the home. The *Puente* court quoted a Michigan case wherein a sister from West Germany visiting her brother for a 6– to 8–week period was found not to be a resident of his household:

> Relatives such as plaintiff are temporary guests when visiting for definite periods of time, and living in the same dwelling under these circumstances does not qualify her as an insured under the terms of the policy."

*Puente*, 366 So. 2d at 858 (quoting *Stadelmann v. Glen Falls Ins. Co.*, 5 Mich. App. 536, 147 N.W.2d 460, 463 (1967)).

▮ Applying this case law from other jurisdictions to the facts before us, we hold that King was not a resident of Kester's household. Although King at the time of the incident was living under Kester's roof in a close, intimate and informal relationship with her, King did maintain another lodging in Arizona, to which he intended to return after his stay of a week or 10 days. The duration of his visit was temporary instead of permanent. The facts here show no indicia of permanence. Kester's affidavit indicates that neither party intended the arrangement to be anything more than a vacation for King, and the affidavit states that insurance coverage for King was certainly never contemplated by either Kester or King.

However, the Dautels argue another reason for ambiguity surrounding the term "resident". They refer to the policy's use of the term "regular resident" in another section of the policy. The section of the policy concerning medical payments to others excludes regular residents of the household other than residence employees. The Dautels argue that because the policy uses the phrase "regular residents", something broader than the normal interpretation of the word "resident" in the liability section is required.

We find this argument to be without merit. A reading of the whole sentence in the medical coverage section indi-

cates that the drafters of the policy used the word "regular" to modify "resident" to distinguish from "residence employees", who can receive medical payments for injuries incurred while at the homeowner's home. There is a clear purpose for the use of the word "regular", that is, to clarify a distinction between a residence employee and other residents.

Thus, this court cannot find that "residents of [the] household" must be given a broad definition to include any relative who stays temporarily at the home of the insured. To do so would eliminate any distinction between visitors/guests and true residents of the household.

The Dautels' judgment against United Pacific is therefore reversed and this case is remanded to the trial court for entry of a dismissal of the action with prejudice.

RINGOLD and WEBSTER, JJ., concur.

Review denied by Supreme Court November 3, 1987.