State Farm Mutual Automobile Insurance Company ("State Farm") filed a complaint for a declaratory judgment against Melvis C. Davis, Sr. ("the father"), and his son, Melvis C. Davis, Jr. ("Chuck"). State Farm sought a judgment declaring that Chuck was not an insured under the father's policies of insurance with State Farm. Chuck and his father counterclaimed, alleging breach of contract, asserting that State Farm had failed to pay certain uninsured motorist benefits and medical payments benefits pursuant to the terms of the policies. Thereafter, State Farm filed a motion to sever the counterclaim, which the trial court granted. Subsequently, the trial court entered a judgment in favor of State Farm, holding that Chuck was not insured under the policies of insurance issued by State Farm to his father, because Chuck "did not maintain his residence [with his father]." Chuck and his father appeal. We reverse and remand.
Chuck's father was the named insured on three policies of insurance with State Farm that covered vehicles owned by him, with each of these policies providing for uninsured motorist coverage. On November 30, 1986, Chuck received severe injuries as the result of an automobile accident with an uninsured driver. At the time of the accident, Chuck was 28 years old and divorced. All of the policies issued to Chuck's father provided coverage for relatives of the named insured under the uninsured motorist coverage, as follows:
 "SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U
". . . .
"Who Is an Insured
 "Insured — means the person or persons covered by uninsured motor vehicle coverage.
"This is:
"1. the first person named in the declarations;
"2. his or her spouse;
"3. their relatives. . . ."
(Emphasis added.) In the definition section of each policy designated "DEFINED WORDS WHICH ARE USED IN SEVERAL PARTS OFTHE POLICY," the term "relative" is defined as "a person
related to you or your spouse by blood, marriage or adoption who lives with you. It includes *Page 227 your unmarried and unemancipated child away at school."
We must determine whether the trial court properly determined that Chuck did not "live with" his father at the time of the accident, within the meaning of the policy provisions.[1] We note that the trial court's order specifically reads, in pertinent part, as follows:
 "This cause came to be heard upon testimony taken and other evidence presented at an oral hearing, without jury, on the issue of insurance coverage. Based upon the evidence presented to it, the Court finds that [Chuck] did not maintain his residence at 3102-27th Court North which is the residence of [his father], but instead maintained his residence at Apartment 109, 1309 21st Street North. [Chuck] is therefore not an insured under the policies of insurance issued by [State Farm] to [his father.]"
In Crossett v. St. Louis Fire Marine Insurance Co.,289 Ala. 598, 269 So.2d 869 (1972), the Court held that the word "reside" was ambiguous. Thus, according to State Farm, in an attempt to avoid using a "flexible, elastic, or slippery" term to designate those who are insured under the policy, it substituted the words "live with" for "resident of." By substituting the phrase "living with you" (which State Farm contends is susceptible of only one interpretation — actually living in fact — and is therefore not ambiguous), State Farm contends that it modified the language in its policies in order to address the ambiguity analysis in Crossett v. St. Louis Fire Marine Insurance Co., supra, and in order to restrict coverage.
Therefore, although the trial court made its determination based on a finding as to where Chuck "maintain[ed] his residence," the issue for our review is not "where [Chuck] maintained his residence," but whether Chuck was "living with" his father at the time of the accident so as to be covered under his father's policies of insurance for uninsured motorist coverage.
Chuck and his father contend that just as the word "resides" was found to be ambiguous, the phrase "lives with" is also ambiguous. They also contend that a person can live in more than one place and that the evidence establishes that Chuck lived with his father at the time of the accident for purposes of uninsured motorist coverage; they, thus, argue that the phrase "lives with" is ambiguous and that the ambiguity should be resolved in favor of the father as the insured.
According to Chuck and his father, the facts are as follows:
In 1978, Chuck married Ravena Davis ("Ravena") and, with his parents' help, leased an apartment at 1309 21st Street North in Birmingham, Alabama, where he and Ravena lived until they divorced in July 1980. Ravena, who had custody of their children, moved out of the apartment and moved into her grandmother's apartment, taking most of the furniture with her. Sometime thereafter, Ravena returned and took the remaining furniture. There was no bedroom furniture in the apartment, but there was a couch, a dinette set, and a television. With virtually no furniture in the apartment, specifically no bedroom furniture, Chuck began spending nights at his parents' house, which was located at 3102 27th Court North in Birmingham. At the time of his divorce, Chuck was working at Stockham Valves Fittings in Birmingham. However, in 1984 (four years after his divorce from Ravena), Chuck suffered an on-the-job injury for which he received workmen's compensation benefits but which prevented him from working for approximately one year. Thus, after his on-the-job injury, Chuck began to spend more time at his parents' house, where he had his own bedroom; where he ate his meals; where he kept all of his clothing, toiletries, and personal possessions; where he kept his automobile; and where his friends visited and telephoned *Page 228 
him before they would try anywhere else. The apartment remained in Chuck and Ravena's names; and although Chuck did not spend his nights at the apartment or keep food, clothes, or personal possessions there, he and his friends began to use it as a "hangout." Chuck also continued to receive mail at the apartment and continued to use the apartment address on various documents, e.g., tax forms, job applications, and his driver's license. In late 1985, Chuck began working part-time, earning approximately $100 per week. However, because he was still unable to be independent, Chuck continued to stay with his parents; but because his parents also were willing to maintain the apartment, he continued to use it as a "hangout."
State Farm contends that the overwhelming weight of the evidence reveals that Chuck was "living" at his apartment at the time of the accident and that, at best, Chuck was a frequent and welcome visitor at his parents' house. According to State Farm, the "demonstrative" evidence reveals that Chuck kept furniture at the apartment; spent nights at the apartment; occasionally kept his children at the apartment, where they would spend the night; listed his apartment address for his driver's license, for a traffic ticket, and for hospital emergency room records after his accident; and claimed himself for income tax purposes until after the accident. According to State Farm, in addition to this "demonstrative" evidence, the "credible" evidence reveals that Chuck's neighbor in the apartment complex observed Chuck on a regular basis at the apartment; that Ravena would call the apartment first when trying to locate Chuck; and that some mornings before work, as early as 7:30 a.m., Ravena would bring the children to the apartment, at which time Chuck would be present.
It is apparent from the brief recitation of the facts above, from the perspective of both Chuck and his father and from the perspective of State Farm, that there is no substantial conflict in the evidence and that any conflict that exists is immaterial. Therefore, we must determine whether the trial court correctly applied the law to the facts.
It is well settled that insurance contracts are to be construed liberally with regard to coverage and that any doubt in coverage should be resolved in favor of the insured:
 "It has been so often repeated as to scarcely require authority that policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer. This, for the reason that policies of insurance are unipartite. We denominate them 'contracts' yet only the insurer signs them. The insured generally sees the policy only after he has already paid the premium. The policy provisions are inserted by those skilled in insurance law and acting in the interest of the company. . . .
". . . .
 " 'The rule is too well settled by our decisions to require citation of authority that where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction will be adopted which is favorable to the insured.' "
(Citations omitted.) Crossett v. St. Louis Fire MarineInsurance Co., 289 Ala. 598 at 603-04, 269 So.2d 869 at 873 (1972), quoting State Farm Mutual Automobile Ins. Co. v. Hanna,277 Ala. 32, 37, 166 So.2d 872, 876 (1964) (emphasis added inCrossett); see Bayles v. Southern Guaranty Insurance Co.,484 So.2d 1065 (Ala. 1986).
In Crossett v. St. Louis Fire Marine Insurance Co., supra, the Court examined the meaning of the words "resident" and "residence" within the context of an insurance policy and, having found the term "resides" to be ambiguous, construed the insurance policy so as to provide coverage:
 " 'A resident of a household is one who is a member of a family who live under the same roof. . . . [American States Ins. Co., Western Pac. Div. v. Walker, 26 Utah 2d 161, 486 P.2d 1042 (1971).]'
". . . .
 " 'While a person may have only one domicile (his permanent residence and principal establishment), he may as a *Page 229 matter of fact have more than one residence (his actual dwelling place, or where he actually lives). [Manuel v. American Employees Insurance Co., 228 So.2d 321 (La.App. 1969).]'
". . . .
 " 'The word "residing" is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word "reside" may correctly denote either the technical domicile, or the actual personal residence. The word "reside" is often used to express a different meaning according to the subject matter.' "
(Citations omitted.) (Emphasis in last paragraph added; other emphasis original.) 289 Ala. at 602-03, 269 So.2d at 873, quoting State Farm Mutual Automobile Ins. Co. v. Hanna,277 Ala. at 37, 166 So.2d at 876; see Bayles v. Southern GuarantyInsurance Co., supra.
In the Crossett case, the Court denotes "residence" as being synonymous with where one "actually lives" and defines "resident" as a family member who "lives under the same roof." In addition, the Court in Crossett, determined that one as a matter of fact may have more than one residence (his actual dwelling place or where he actually lives). See, also, Baylesv. Southern Guaranty Insurance Co., supra.
This Court has not previously examined the precise contract language presented in the policies at issue — the term "living with." In fact, both Chuck and his father and State Farm acknowledge that there are no Alabama cases that have interpreted the language "living with." However, in support of its position, State Farm cites us to a number of cases from other jurisdictions in which such language has been considered:State Farm Mutual Automobile Insurance Co. v. Novak, 167 Ariz. 363,807 P.2d 531 (Ct.App. 1990); Coley v. State Farm MutualAutomobile Insurance Co., 178 Ill. App.3d 1077, 128 Ill.Dec. 200, 534 N.E.2d 220 (1989); McDonough v. State Farm MutualAutomobile Insurance Co., 755 S.W.2d 57 (Tenn.App. 1988);Stoner v. State Farm Mutual Automobile Insurance Co.,780 F.2d 1414 (8th Cir. 1986). In support of their position, Chuck and his father attempt to distinguish those cases cited by State Farm and cite us to Fisher v. Novak, Superior Court of Delaware (June 11, 1990, Case No. 88C-MY-21), 1990 WL 82159.
After thoroughly reviewing the above-cited cases, we find the cases cited by State Farm to be distinguishable from the instant case;[2] and although we find none of those cases to be directly on point, we find the legal reasoning of the Delaware Superior *Page 230 
Court in Fisher v. Novak, supra, to be sound and persuasive:
 "State Farm has here chosen a term, 'live with,' that . . . is of everyday ordinary use. Webster's 9th New Collegiate Dictionary defines 'reside' as 'to dwell permanently and continuously: occupy a place as one's legal domicile' . . . but the relevant definition of 'live' is 'to occupy a home: dwell.' Webster's 9th New Collegiate Dictionary, Merriam-Webster, Springfield, Mass. (1989). Thus, Webster's 9th New Collegiate would define 'reside' as to 'live with' permanently or continuously. Webster's 3rd New International Dictionary, on the other hand, defines these terms somewhat more broadly. It defines 'reside' in pertinent part as: 'to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile.' 'Live' is defined as: 'to occupy a home: dwell, reside.' Webster's Third New International Dictionary, Merriam-Webster, Springfield, Mass. (1986). Thus, the phrase 'to live with' is ambiguous. It can mean, as State Farm argues, 'to reside with, to dwell permanently and continuously with.' It can also mean 'to occupy a home with, to dwell with. . . .'
 "Resolving this ambiguity in favor of the insured, [the trial court finds] that 'to live with' as used in the policy means 'to occupy a home with, to dwell with' whether or not permanently or continuously. . . . Such construction certainly comports with the reasonable expectations of an insured who has paid for uninsured motorist coverage for blood relatives who live with him.
 ". . . Summary judgment is entered on behalf of the plaintiff with respect to the issue of . . . a 'relative' of the insured [in terms of those 'living with' the named insured] under the terms of the policy."
(Emphasis added.)
In addition to our exhaustive research into the law of other jurisdictions for their interpretations of the term "live with" as it relates to insurance coverage, we independently researched the definition of the word "live" to determine if it had a technical meaning and/or a fixed meaning applicable to all cases. We found neither. Black's Law Dictionary 934 (6th ed. 1990) states that "[t]o live in a place, is to reside
there, to abide there, to occupy as one's home"; it defines "living" as "to abide, to dwell, to reside," id. at 935; and it defines "reside" as "[l]ive, dwell, abide, sojourn, stay, remain, lodge." Id. at 1309. The American Heritage Dictionaryof the English Language 1106 (1969) defines "reside" as "[t]o live in a place for an extended or permanent period of time; [t]o be inherently present; exist," and it defines "live" as "[t]o reside." Id. at 763. In Roget's InternationalThesaurus 187.8 (3d ed. 1962), the words "reside," "live," and "dwell" are listed as synonyms.
Thus, not only is the word "live" susceptible of more than one meaning, but it is also synonymous with the word "reside," a term found to be ambiguous in Crossett v. St. Louis Fire Marine Insurance Co., supra. Therefore, we hold that the term "live with," as used in the policy in question, is an "ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode." Therefore, we must follow the rule governing provisions in insurance contracts that are susceptible of plural constructions; that is, we must construe the policy in question in favor of the insured, the father. Although we cannot hold the trial court clearly erroneous in finding that Chuck "lived" at the apartment, there was no evidence from which the trial court could reasonably infer that Chuck did not also "live with" his father at the time of the accident for purposes of uninsured motorist coverage.
Based on the foregoing, we hold that the trial court erroneously applied the law to the facts of the instant case. Therefore, we reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
[1] We note, at this point, that there are no allegations of misrepresentation as to who is or is not a resident of the father's household. See Bayles v. Southern Guaranty InsuranceCo., 484 So.2d 1065 (Ala. 1986).
[2] In State Farm Mutual Automobile Insurance Co. v. Novak, supra, the holding was based on the court's determination that the policy language at issue — whether the person "lives with" the named insured — was equivalent to policy language reading "resident of the same household," a phrase found to be unambiguous in Mid-Century Ins. Co. v. Duzykowski, 131 Ariz. 428,641 P.2d 1272 (1982).
In McDonough v. State Farm Mutual Automobile Insurance Co., supra, the court found "lives with" to be commonly used as a synonym for "reside," which it held was not ambiguous, and focused on whether the deceased's presence in his parents' house qualified him as a resident.
In Coley v. State Farm Mutual Automobile Insurance Co., supra, the court defined the term "lives with," which it had determined to be unambiguous, as " 'to dwell, i.e., to remain for a time, to live as a resident,' " and to " 'cohabit, i.e., to live together.' " (Citation omitted.) The court then held that, under the facts of that case, the decedent did not live with his grandfather at the time of his death within the meaning of the policy.
In Stoner v. State Farm Mutual Automobile Insurance Co., supra, the court dismissed the plaintiff's argument that "lives with" was ambiguous, holding that "the phrase 'lives with you' was susceptible of only one interpretation," but equated the words "residence" and "domicile," calling them synonyms. *Page 231