[Nos. 31844-6-I; 32110-2-I.    Division One.    January 18, 1994.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Appellant,* v. BARRY D. JOHNSON, *Respondent.*

*William R. Hickman, Michael S. Rogers,* and *Reed McClure,* for appellant.

*R. Andrew Bergh, Christopher C. Pence,* and *Pence & Dawson,* for respondent.

COLEMAN, J. — State Farm Mutual Automobile Insurance Company appeals two cross orders of summary judgment. In the first order, Judge Lloyd Bever granted Barry Johnson's motion for summary judgment, finding that he was an insured under his father's policy. State Farm argues on appeal that Barry Johnson is not an insured under the underinsured motorist (UIM) provision of his father's policy because Barry Johnson was not "living with" his father within the meaning of the coverage.

In the second order, Judge Liem Tuai granted Barry Johnson's motion for summary judgment, finding that the "other insurance" clause in his father's policy was ambiguous and unenforceable. State Farm argues on appeal that the "other insurance" clause in Johnson's father's policy unambiguously limits UIM excess coverage to the amounts already received by Barry Johnson under other policies.

State Farm also appeals two separate orders awarding Barry Johnson attorney fees. We affirm in part and reverse in part and remand for recalculation of attorney fees.

Barry Johnson lived with his parents, Marco and Lavonne Johnson, until his high school graduation in 1971. Barry subsequently married Mary Jane Bies and they had two children. Both prior to and during the marriage, Barry and Mary Jane established a number of residences in Washington and Alaska. Barry was alternately employed as a commercial fisherman and an electrical engineer. Between residences, Barry and Mary Jane, and sometimes just Mary Jane, occasionally lived with Barry's parents.

In July 1984, Barry traveled to Texas to investigate a job offer. After he accepted the position, Mary Jane and the children soon joined him. The family took only those possessions that they could carry on the plane, and they stored their

furniture and other belongings in Barry's parents' home in Seattle. During their 2½-year stay in Texas, Barry purchased furniture, obtained a Texas driver's license, and otherwise established his residence in Texas.

In October 1986, the Johnsons decided to move back to Seattle. Barry went ahead of Mary Jane and the children in order to find a job and a place to live for his family. Mary Jane and the children were to follow once Barry was settled and the children could be moved without substantial disruption to their lives. During this period, Barry lived with his parents. Barry and his parents understood that this living arrangement might extend indefinitely.

Shortly after his arrival in late October, Barry found a job as a marine engineer with a former employer. He then enrolled his eldest daughter for school, using his parents' address as her listed address. On November 17, Barry signed a lease for a rental home, with the lease commencing December 1.[1]

On November 20, while being driven from work to home by co-worker Michael Ogilvie, Barry was injured in an automobile accident caused by an uninsured driver. On November 25, Barry flew to Texas to move his family to Seattle. The family arrived on November 30, stayed the night at Barry's parents, and moved into the rental house on December 1.

Barry has made three UIM claims under three separate State Farm policies.[2] The first policy belongs to Michael Ogilvie. State Farm has paid the UIM coverage limit of $50,000 to Barry under this policy. The second policy belongs to Barry Johnson. State Farm has paid the UIM coverage limit of $50,000 to Barry under this policy. The third policy, which is the subject of this appeal, belongs to Barry's father,

---

[1]The record is not clear as to whether Barry enrolled his daughter using his parents' address before or after signing the lease.

[2]Barry also made an additional claim under his mother's policy, but later conceded that it did not cover him. Judge Tuai issued a summary judgment order in favor of State Farm, declaring that there was no UIM coverage for Barry under the Lavonne Johnson policy.

Marco Johnson. State Farm has refused to pay Barry Johnson under the Marco policy, claiming that he is not an insured under the policy and, even if he were, that he has already received the policy coverage limit.

In May 1992, State Farm brought a declaratory judgment action to determine the UIM coverage under the Marco policy. The case was resolved by two separate summary judgment rulings. In the first ruling, Judge Bever issued partial summary judgment, finding that Barry Johnson was "living with" his father within the meaning of the Marco policy UIM provision defining an insured.

In the second ruling, Judge Tuai issued an order on cross motions for summary judgment, holding that the "other insurance" clause in the Marco policy was ambiguous and unenforceable and declaring that the Marco policy extends $100,000 of UIM coverage to Barry Johnson.

In addition, two other orders were issued, awarding attorney fees to Barry Johnson. In the first order, Judge Tuai awarded Barry Johnson $10,000 for attorney fees incurred after September 22, 1992. In the second order, Judge Bever awarded Barry Johnson $9,500 for attorney fees incurred through September 21, 1992. Prior to each award, State Farm requested an evidentiary hearing. State Farm hoped to subpoena the supporting documentation for the "billing detail" submitted by Johnson's attorney and to cross-examine the attorney as to the entries in the billing detail. Both judges ruled on Johnson's application for attorney fees without a hearing. State Farm appeals.

When reviewing an order of summary judgment, the appellate court must engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990) (citing *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)). An order of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marincovich*, at 274 (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). The court must consider the facts in the light most favorable to

the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Marincovich*, at 274 (citing *Wilson*, at 437).

We initially consider whether, as a matter of law, Barry Johnson is a "relative" who "lived with" the insured, Marco Johnson, within the meaning of the State Farm/Marco Johnson UIM coverage policy provision. Under this provision, an insured includes the "relatives" of the first person named in the policy. A relative is defined as "a **person** related to **you** by blood or adoption who lives with **you**. It includes **your** unemancipated child away at school." Johnson's status as an insured turns on whether he "lived with" Marco Johnson at the time of his injury.

State Farm argues that although Washington courts have not yet construed the phrase "who lives with you" in the insurance policy context, they have construed a similar definition of "relative" using the phrase "resident member of the named insured's household". Accordingly, State Farm argues that the Washington case law construing the phrase "resident member of the named insured's household" controls this issue because "resides with" is synonymous with the phrase "who lives with you". State Farm argues that its approach represents the majority rule.

State Farm argues that Washington case law, in turn, defines "resides with" as requiring a permanent living arrangement. *See Consumers United Ins. Co. v. Johnson*, 26 Wn. App. 795, 801, 614 P.2d 657, *review denied*, 94 Wn.2d 1022 (1980). Under this standard, State Farm contends that Barry Johnson did not "live with" his father. Rather, State Farm claims that Barry lived with his family in Texas and was only staying with his father in Washington until his return to Texas. Therefore, because Barry does not meet the definition of a "relative", he is not an insured for purposes of UIM coverage under the Marco policy. We disagree.

Contrary to the position taken by State Farm, there is no majority rule holding that the terms "reside with" and "live with" are synonymous. In fact, the case law from other jurisdictions, which construes the identical policy provision at

issue, is conflicting. While all of the courts agree that the policy language should be construed according to its plain meaning, they diverge as to whether the terms are synonymous and whether the terms are ambiguous.[3]

█ We find persuasive, however, those cases construing the term "living with" as being qualitatively different, and therefore not synonymous, with the term "residing with".[4] As those cases note, the two terms cannot be synonymous given that the term "lives with" has no legal or technical meaning, unlike the term "residing with". As the court stated in *Fisher v. Novak*, No. CIV.A.88C-MY-21, 1990 WL 82159, at *2 (Del. Super. Ct. Mar. 20, 1990), *aff'd,* 599 A.2d 414 (Del. 1991):

> Most uninsured motorists' policies described in the case law limit coverage to relatives "residing with" the named insured, or to "residents of the same household" as the named insured. In contrast, State Farm has here chosen a term, "live with", that unlike "residence" or "domicile" has no particular legal or technical significance and is of everyday ordinary use.

(Footnote and citations omitted.) *Fisher,* at *3.

We similarly find persuasive those cases which hold that the term "lives with" in the context of an insurance policy such as the one here is not ambiguous.[5] Specifically, the term "lives with", as used in the policy, means living or dwelling in fact whether or not permanently or continuously.[6] *See Stoner v. State Farm Mut. Auto. Ins. Co.,* 780 F.2d 1414, 1417 (8th Cir. 1986).

---

[3]*See Stoner v. State Farm Mut. Auto. Ins. Co.,* 780 F.2d 1414 (8th Cir. 1986); *Davis v. State Farm Mut. Auto. Ins. Co.,* 583 So. 2d 225 (Ala. 1991); *Coley v. State Farm Mut. Auto. Ins. Co.,* 178 Ill. App. 3d 1077, 534 N.E.2d 220 (1989); *McDonough v. State Farm Mut. Auto. Ins. Co.,* 755 S.W.2d 57 (Tenn. Ct. App. 1988); *Fisher v. Novak,* No. CIV.A.88C-MY-21, 1990 WL 82159 (Del. Super. Ct. Mar. 20, 1990), *aff'd,* 599 A.2d 414 (Del. 1991). *See also State Farm Mut. Auto. Ins. Co. v. Novak,* 167 Ariz. 363, 807 P.2d 531 (Ct. App. 1990).

[4]*See, e.g., Stoner,* at 1417; *Fisher,* at *2; *see also Coley,* at 222-23.

[5]*See, e.g., Stoner,* at 1417; *Novak,* at 367; *see also Coley,* at 221-22.

[6]Significantly, the position taken by State Farm on this issue is directly contrary to an earlier position taken in *Davis v. State Farm Mut. Auto. Ins. Co.,* 583 So. 2d 225 (Ala. 1991). In that case, the insured's divorced son, who kept an apartment in the names of himself and his former wife but regularly spent the

■ In any event, even if we were to find ambiguity with the term "lives with", ambiguous terms must be construed in favor of the insured. *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987) (citing *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976)). Under this rule of construction, we would therefore still have to find that the term "lives with", as used in the policy, simply means to occupy or dwell.

Thus, in this case, Barry Johnson "lived with" the insured, Marco Johnson, within the meaning of the State Farm UIM coverage policy provision. In October 1986, Barry and Mary Jane decided to leave Texas and return to Seattle. While Mary Jane and the children remained in Texas, Barry Johnson relocated to Seattle and moved in with his parents. Thus, Barry did not return to Seattle simply to investigate employment opportunities. Rather, he came to Seattle to find permanent employment and to locate a home for his family.

While in Seattle, Barry's sole and exclusive abode was at his parents' home. Barry and Marco had a mutual understanding that this living arrangement might continue indefinitely and that Mary Jane and the children might soon follow. Indeed, Barry enrolled one of his daughters for school using his parents' address. The fact that Barry had signed a lease for a rental home is irrelevant given that he and his family could not actually occupy the home until December 1. Likewise, the fact that Barry owned a home in Texas is irrelevant given that he did not intend to return there other than to move his family.

■ Thus, Barry Johnson was "living with" Marco Johnson despite the fact that he did not intend to stay permanently. Barry Johnson therefore met the definition of an "insured"

---

night at his parents', claimed that he "lived with" his father under the policy. *Davis*, at 227-28. State Farm argued, however, that the son lived in his apartment and only frequently visited his parents. *Davis*, at 228. In so arguing, State Farm indicated that it had substituted "live with" for "resident of " in order to address the ambiguity issue and in order to restrict coverage. *Davis*, at 227. Specifically, State Farm contended that the substituted phrase was "susceptible of only one interpretation — *actually living in fact* — and [was] therefore not ambiguous[.]" (Italics ours.) *Davis*, at 227.

and was covered under the UIM provisions of his father's policy at the time of the accident.

Notwithstanding the foregoing analysis, even if we were to find that the terms are synonymous and that the Washington case law construing the term "resident member" applies, Barry Johnson still "lived with" Marco Johnson within the meaning of the policy. Specifically, in construing the term "resident member", the court in *Consumers United Ins. Co. v. Johnson*, 26 Wn. App. 795, 801, 614 P.2d 657, *review denied*, 94 Wn.2d 1022 (1980) stated that this term referred to "a living arrangement with some degree of permanence". In so finding, the court denied coverage to a friend of the named insured where he occasionally used the named insured's apartment as " 'someplace to crash' ". *Johnson*, at 800.

Using the same standard in *Dautel v. United Pac. Ins. Co.*, 48 Wn. App. 759, 740 P.2d 894, *review denied*, 109 Wn.2d 1009 (1987), the court held that the named insured's brother, who only planned to stay with the named insured for 10 days before returning to Arizona, was a temporary guest, not a resident member of the named insured's household. *Dautel*, at 766.

Like the above cases, State Farm argues that the requisite degree of permanence is not present in this case because Barry did not intend to live with his parents. Rather, according to State Farm, Barry intended to stay with his parents only until he found other lodging for his family.

■ We find, however, that *Johnson* and *Dautel* are distinguishable from the case presented. Unlike *Johnson*, Barry's sole and exclusive abode once he arrived in Seattle was at his parents' home. And, although Barry planned to arrange for other lodging, he intended to stay indefinitely in his parents' home until he could find something satisfactory for his family. Moreover, unlike *Dautel*, Barry was more than a visitor or temporary guest in his parents' home. The evidence indicates that Barry intended to live in Seattle. State Farm ignores the fact that Barry's return to Texas was solely for the purpose of moving his family. Thus, even assuming that the Washington

case law relied on by State Farm applies, sufficient indicia of permanence are present in this case to find that Barry Johnson "lived with" the named insured, his father, under the Marco Johnson policy.

■ We next determine whether the antistacking provision of the "other insurance" clause in the State Farm/Marco Johnson insurance policy is ambiguous and unenforceable. "A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 198, 743 P.2d 1244 (quoting *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 840-41, 734 P.2d 17 (1987)). The policy should be given a fair, reasonable, and sensible construction such as would be given to the contract by the average person purchasing insurance. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). Ambiguous clauses must be construed in favor of the insured, even though the insurer may have intended another meaning. *Vadheim*, at 840-41 (citing *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976)).

The "other insurance" provision at issue in this case provides as follows:

**If There Is Other Coverage**

. . . .

3. If the **insured** sustains **bodily injury** while **occupying** a vehicle not owned by **you, your spouse** or any **relative:**
   a. and other underinsured motor vehicle coverage from a policy issued by us to **you** applies, the total limit of liability available from all such coverages shall not exceed that of the coverage with the highest limit of liability.
   b. Subject to a. above, if any other underinsured motor vehicle coverage is available, this coverage is:
      1. excess to any underinsured motor vehicle coverage that applies to the vehicle as primary coverage, but
      2. only in the amount by which this coverage exceeds the primary coverage.
      If other coverage also applies as excess:
      1. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that

applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

2. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable as excess.

The antistacking provision is located in the second and third sentences of paragraph 3(b).

The Legislature has expressly authorized the use of such antistacking provisions in "other insurance" clauses as they relate to UIM coverage. RCW 48.22.030(6) provides:

The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

The Washington Supreme Court has made clear, however, that such clauses are enforceable only if they are unambiguous. *Vadheim*, at 844.

As Barry correctly contends, the "other insurance" clause in the Marco Johnson policy is ambiguous because it is fairly susceptible to two different, but reasonable, interpretations. On the one hand, State Farm reasonably argues that the phrase "other underinsured motor vehicle coverage" means any UIM coverage, including UIM coverage issued solely by State Farm. Barry Johnson, on the other hand, reasonably argues that to an average purchaser of insurance, this same phrase suggests insurance provided by a company other than State Farm. As we explain below, the latter interpretation is reasonable when the "other insurance" clause is read in light of the contract as a whole and the proration clause.

As to the construction of the "other insurance" clause, both parties agree that because paragraph 3(b) is made "subject to" paragraph 3(a), the two paragraphs must be read together. The parties also agree that paragraph 3(a) is triggered only as to a policy issued to the *named insured* or the named insured's *spouse*.[7] In the context of this case, there-

---

[7]Specifically, paragraph 3(a) applies to other UIM coverage "from a policy issued by us to **you**." "You" is defined under the policy as the named insured or "a **person** regularly residing in the named insured's household with whom the

fore, the only policies triggered under paragraph 3(a) are the Marco Johnson and Lavonne Johnson policies, the latter of which Barry has conceded that he is not entitled to coverage.

The difficult question is what effect paragraph 3(a) has on paragraph 3(b). The first sentence of paragraph 3(b) provides "[s]ubject to a. above, if *any* other underinsured motor vehicle coverage is available . . .". (Italics ours.) According to State Farm, the word "any" refers to any other policy (*i.e.*, outside of those policies referred to in paragraph 3(a)) providing UIM coverage, including those issued solely by State Farm. Thus, State Farm contends that the phrase "other underinsured motor vehicle coverage" is saved from ambiguity because it is modified by the word "any".[8]

Under this interpretation, Marco Johnson's policy is excess to any UIM coverage that applies to the vehicle as *primary* coverage, but only in the amount by which the Marco Johnson UIM coverage exceeds the primary coverage. Therefore, because the Marco Johnson UIM coverage limit is $100,000 and the Ogilvie *primary* UIM coverage limit is $50,000, Barry Johnson is entitled to no more than $50,000 in excess coverage under the first sentence of paragraph 3(b).

---

named insured has a personal relationship arising out of a civil contract." Thus, because a "relationship arising out of a civil contract" refers to marriage, "you" only includes the named insured and his or her spouse.

[8]State Farm asserts that this court enforced "substantially similar language" in *Furlong v. Farmers Ins. Co.*, 44 Wn. App. 458, 721 P.2d 1010, *review denied*, 107 Wn.2d 1017 (1986). In *Furlong*, the plaintiff was injured while riding as a passenger in an uninsured vehicle. He sought UIM coverage under both his mother's and stepfather's separate policies issued by Farmers Insurance. Both policies contained identical "other insurance" clauses:

> If *any* applicable insurance other than this policy is issued to *you* by us or *any* other member company of the Farmers Insurance Group, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

(Some italics ours.) *Furlong*, at 459. The only substantial likeness in language, however, between the *Furlong* provision and the one in our case is the word "any". Unlike the Marco Johnson policy, the above provision clearly avoids ambiguity because the word "any" is followed by language stating that Farmers Insurance policies are included.

As State Farm asserts, however, paragraph 3(b) does not stop at the first sentence. It also incorporates the second sentence, which begins: "If other coverage also applies as excess". State Farm argues that this phrase refers to other excess coverage outside of the coverage provided under paragraph 3(a), and that, again, this may include coverage issued solely by State Farm.

Under this interpretation, "the **total** limit of liability for **excess** UIM coverage shall not exceed the difference between the primary coverage limit [*i.e.*, the Ogilvie policy] and the highest limit of liability of any one of the coverages that apply as excess [*i.e.*, the Marco Johnson policy]." Thus, because Barry Johnson has received $50,000 under the Ogilvie primary coverage and $50,000 in excess coverage from his *own* policy, State Farm claims that he has already recovered up to the highest limit of liability under the Marco Johnson policy, which is $100,000. We reject this interpretation.

The controlling standard is how the average purchaser of insurance would read this clause. Paragraph 3(a) is very clear about the UIM coverage to which it applies: "other underinsured motor vehicle coverage *from a policy issued by us to **you**.*" (Italics ours.) This paragraph plainly applies to policies issued exclusively by State Farm. Paragraph 3(b) immediately follows and refers to "any other underinsured motor vehicle coverage". The clear suggestion of this language is that paragraph 3(b) applies only to policies issued by insurance companies other than State Farm.

Furthermore, when the Marco Johnson policy is read as a whole, State Farm consistently makes clear the distinction between coverages issued by State Farm and coverages from "other sources". For instance, under the liability, personal injury protection, and damages sections of the policy, each "other insurance" clause is divided into separate headings. The two separate headings are entitled "Policies Issued by Us to You" and "Other Liability Coverage Available From Other Sources". In light of this consistent parallel structure throughout the policy, the ordinary purchaser of insurance could reasonably interpret the phrase "other underinsured

motor vehicle coverage" in the UIM clause to refer to insurance provided by an insurance company other than State Farm.

Moreover, in every "other insurance" clause in the Marco Johnson policy, a proration provision is included. In each of these proration provisions, State Farm provides that it is only liable for "our share". In this context, it is not unreasonable for an insured to assume that "our share" presupposes that there must also be "their share". *See Hawn v. State Farm Mut. Auto. Ins. Co.*, 768 F. Supp. 293 (E.D. Wash. 1991), *aff'd*, 977 F.2d 589 (9th Cir. 1992).[9]

Thus, when the State Farm "other insurance" clause is read in light of the entire contract and in conjunction with the proration clause, an average purchaser of insurance could reasonably interpret paragraph 3(b) as referring only to policies issued by insurance companies other than State Farm. Therefore, construing the ambiguity in favor of the insured, we find that Barry Johnson is entitled to recover under the Marco Johnson policy.

■ The next issue raised by State Farm is whether the trial courts erred in awarding attorney fees to Barry Johnson. The Washington rule on attorney fees provides that an award is proper only when authorized by a contract, statute, or recognized ground of equity. *State v. Keeney*, 112 Wn.2d 140, 142, 769 P.2d 295 (1989). In *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), however, the Supreme Court extended this rule to provide attorney fees to an insured whenever that individual is compelled to enforce an insurance contract through legal action. *Olympic S.S.*, at 53.

---

[9]State Farm contends that *Hawn* is distinguishable from the present case because the policy language is different. In *Hawn*, the language being construed provided UIM coverage for injury as a pedestrian, not for injury in a nonowned vehicle, and did not include the word "any". *See Hawn*, at 294-95. State Farm is correct that the structure and some of the language are different, but as to effect, both provisions are generally the same. Furthermore, the decision in *Hawn* clearly turned on the proration provision. How the word "any" would affect an interpretation of the clause was not before the court.

Because the fee award in *Olympic S.S.* was based in part on a supplementary payment clause in the insurance policy at issue, subsequent courts have denied attorney fees in the absence of some contractual attorney fee provision. *See McMahan & Baker, Inc. v. Continental Cas. Co.*, 68 Wn. App. 573, 843 P.2d 1133 (1993); *Hess v. North Pac. Ins. Co.*, 67 Wn. App. 783, 841 P.2d 767 (1992), *rev'd on other grounds*, 122 Wn.2d 180, 859 P.2d 586 (1993). Our Supreme Court, however, appears to have rejected this requirement in *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 844 P.2d 403 (1993).

In *Estate of Jordan*, the assignees of an escrow agent's rights under a fidelity bond brought an action to recover under the bond. Despite the absence of a contractual basis, the court nevertheless awarded attorney fees to the assignees on appeal, citing *Olympic S.S.* for the proposition that an award of fees is required in "any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract[.]" *Estate of Jordan*, at 508 (quoting *Olympic S.S.*, at 53).

State Farm nevertheless contends that *Olympic S.S.* does not apply in a case such as this where attorney fees have been expended to establish the party's status as an insured under the policy. Rather, State Farm asserts that when a claim is made by a person who is not a party to the contract, fairness requires that the insurer be entitled to litigate that person's standing without exposing the insurer to liability for attorney fees.

While there is some merit to this distinction, we nevertheless find that the holding in *Olympic S.S.* is quite specific. The rule provides:

> [A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue.

*Olympic S.S.*, at 53. Given the specificity of the rule and the absence of any limitations, we are constrained to find that the award of attorney fees to Barry Johnson was proper.

■ We next address whether the trial courts' award of attorney fees is supported by the record. A trial court has broad discretion in determining the amount of attorney fees to be awarded, so long as that award is reasonable. *Bentzen v. Demmons*, 68 Wn. App. 339, 350, 842 P.2d 1015 (1993) (citing *Progressive Animal Welfare Soc'y v. UW*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990)). The reasonableness of an award of attorney fees is reviewed under the abuse of discretion standard. *Benzten*, at 350 (citing *Progressive*, at 688).

■ In this case, the attorney fee issue was hotly contested with affidavits from both sides. In particular, State Farm's affidavit in opposition to the award specifically challenged the time spent and the amount of the hourly rate. In awarding attorney fees to Barry Johnson, however, neither court entered findings stating the basis of the award. In the absence of such findings, we cannot evaluate whether there was an abuse of discretion. Accordingly, we remand this case for a determination of attorney fees consistent with the lodestar approach set forth in *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-602, 675 P.2d 193 (1983); *see also Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 124, 786 P.2d 265 (1990).

We next decide whether the trial court erred in denying State Farm's request for attorney fees as the prevailing party on the Lavonne Johnson claim. State Farm contends that it is entitled to attorney fees pursuant to RCW 4.84.330. We disagree. This provision permits an award of attorney fees to the prevailing party only where the contract specifically provides for such an award. Because the Lavonne Johnson policy contains no such provision, the trial court properly denied State Farm's request for attorney fees.

■ State Farm alternately contends that if *Olympic S.S.* authorizes the award of attorney fees to Barry Johnson, then it also authorizes an award of attorney fees to State Farm under the Lavonne Johnson policy. This contention must also be rejected. First, because State Farm did not request attorney fees below based on *Olympic S.S.*, we cannot entertain a claim of error on such grounds. Second, even if State Farm had requested attorney fees below based on

*Olympic S.S.*, this case authorizes an award of attorney fees exclusively to insureds, not insurers. Thus, we find that the trial court properly denied State Farm's request for attorney fees as the prevailing party on the Lavonne Johnson claim.

Finally, as the prevailing party on appeal, Barry Johnson is entitled to attorney fees pursuant to *Olympic S.S.* and RAP 18.1.

The summary judgment orders are affirmed and the attorney fee awards are reversed and remanded for recalculation.

SCHOLFIELD and GROSSE, JJ., concur.

Review denied at 124 Wn.2d 1018 (1994).